GEORGE ENQUIST *v.* GENERAL DATACOM ET AL.
(13971)

PETERS, C. J., GLASS, COVELLO, HULL and BORDEN, Js.

Argued December 11, 1990—decision released March 19, 1991

*Jason M. Dodge,* for the appellant (named defendant).

*T. Stevens Bliss,* for the appellee (plaintiff).

*Robert G. Monstream, Andrew J. Hern* and *William P. Horan, Jr.,* legal intern, filed a brief for Peerless Insurance Company et al. as amici curiae.

Covello, J. This is an appeal from a decision of the compensation review division of the workers' compensation commission. The sole issue presented is whether an employer, who has properly intervened in an action by an injured employee against a third party, may set

off future compensation claims against the net proceeds that the employee thereafter recovers from the third party tortfeasor. We conclude that such a set off is permitted and therefore reverse the decision of the Appellate Court.

Examination of the record discloses the following: On February 27, 1979, the plaintiff crushed the thumb of his left hand while working on a machine at his place of employment. On June 11, 1980, the plaintiff began a third party action against Burndy Corporation, the manufacturer of the machine. On July 7, 1980, the defendant, General Datacom, the plaintiff's employer, filed an intervening complaint in the third party action. On October 23, 1981, the plaintiff and General Datacom signed a voluntary workers' compensation agreement awarding the plaintiff 20.3 weeks as a specific injury award resulting from a 25 percent loss of use of the nonmaster thumb.[1] In September, 1984, the plaintiff and Burndy Corporation settled the third party action for $30,000, of which $2500 was paid to satisfy General Datacom's lien. The plaintiff realized

---

[1] At the time of the commissioner's award General Statutes § 31-308 (b) provided in relevant part: "With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than twenty dollars weekly . . . (8) for the complete and permanent loss of, or loss of the use of the thumb on the master hand, ninety-five weeks, for the thumb on the other hand, eighty-one weeks . . . . If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured person such a proportion of the sum herein provided for the total loss of, or the loss of the use of, such member or for incapacity or both as represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion."

$16,556.50 from the settlement after payment of attorney's fees and expenses.

Thereafter, the plaintiff filed for additional compensation from General Datacom based upon a subsequent increase in the percentage of disability to his thumb. The compensation commissioner, with whom the compensation review division thereafter agreed, concluded that General Datacom, as employer, had a continuing, offsetting lien against the $16,250 net proceeds paid to the plaintiff from the settlement of the third party action. The plaintiff appealed to the Appellate Court, which reversed the decision of the compensation review division. *Enquist* v. *General Datacom*, 21 Conn. App. 270, 572 A.2d 1048 (1990). We thereafter granted certification limited to the issue of whether an employer is entitled to a credit against future workers' compensation benefits in an amount equal to the employee's net recovery from a personal injury claim made against a third party tortfeasor.

Although the workers' compensation statute does not specifically address reimbursement for as yet unknown future benefits, an employer's future liability to pay compensation benefits following recovery from a third party tortfeasor has historically been linked to General Statutes § 31-293 (a) and its predecessors.[2] "[This stat-

[2] General Statutes § 31-293 (a) provides in relevant part: "When any injury for which compensation is payable under . . . this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages . . . the injured employee may proceed at law against such person to recover damages for such injury . . . . If . . . any damages are recovered, such damages shall be so apportioned that the claim of the employer . . . shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee. If the damages, after deducting the

ute] provides, in substance, that an employee who sustains an injury arising out of and in the course of his employment, by reason of the fault and neglect of a third party, may claim compensation under the [Workers' Compensation] Act without prejudice to his common-law right to sue the tort-feasor; that an employer who has paid, or by award become obligated to pay, compensation, may sue the tort-feasor in his own name, with a view to reimbursement; and that, if either sue, the other is entitled to notice and an opportunity to join in the action." *Rosenbaum* v. *Hartford News Co.,* 92 Conn. 398, 400–401, 103 A. 120 (1918).

Section 31-293 (a) further provides for the apportionment between the injured employee and the employer of any recovery from a third party. The "claim of the employer . . . [to the net proceeds from the recovery] shall take precedence over that of the injured employee . . . ." The statute further provides: "If the damages . . . are more than sufficient to reimburse the employer . . . the excess shall be assessed in favor of the injured employee."

In 1951, the General Assembly amended § 31-293 (a), then General Statutes (Sup. 1951) § 1311b, to add the following language: "The rendition of a judgment in favor of the employee or the employer against such party *shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner shall thereafter deem payable to such injured employee.*" (Emphasis

employee's expenses . . . are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. For the purposes of this section the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury. . . ."

added.) This new provision was a response to our earlier holdings to the effect that a recovery against a third party that exceeded the compensation benefits paid, terminated absolutely an employer's obligation to make further compensation payments. See *Stavola* v. *Palmer,* 136 Conn. 670, 73 A.2d 831 (1950); *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 47 A.2d 187 (1946); *Rosenbaum* v. *Hartford News Co.,* supra. As a further addendum, however, the legislature provided that "the *employer's claim* shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit, and (2) *an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury."* (Emphasis added.) It is noteworthy that under the amended statute, it is the *"claim of the employer* . . . [that] shall take precedence over that of the injured employee in the proceeds of such recovery." (Emphasis added.) Further, the reenactment provided that "[i]f the damages, after deducting the employee's expenses as provided above, shall be more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient *to reimburse [the employer] for* * * * *his claim,* and the excess shall be assessed in favor of the injured employee." (Emphasis added.) Thus, the 1951 amendment of § 31-293 (a), in an apparent tradeoff, made the employer liable for future compensation benefits, but gave the employer the right to immediate reimbursement for the present worth of future compensation payments to the extent that the future payments were known and formalized by a commissioner's "award" prior to the disposition of the third party action.

What § 31-293 (a) does not address is the employer's right to obtain reimbursement for compensation obligations unknown at the disposition of the third party

action. While the 1951 amendment of § 31-293 (a) establishes that the employer is liable to pay future compensation payments and is entitled to the immediate reimbursement of future payments known at the disposition of the third party action, it is silent as to the employer's right to a credit for unknown future benefits against the net proceeds of the third party action.

Prior to its 1951 amendment, this court held that the predecessor of § 31-293 (a) required that "if the employer has become obligated to pay compensation, but has not paid it, and the damages recovered [from a third party action] are greater than the amount of compensation the employer has become obligated to pay . . . the entire excess is directed to be assessed in favor of the injured employee, with the consequence of discharging the employer from his ascertained liability under the award. . . . [Section 31-293] either reimburses or discharges the employer out of the first moneys available for the payment of damages." *Rosenbaum* v. *Hartford News Co.,* supra, 401–402.

In its 1951 amendment, the legislature provided that an employer had a continuing obligation to provide compensation. The General Assembly, however, made no attempt to alter our earlier construction of the statute, as set forth in *Rosenbaum,* that an employer was discharged from his obligations to the extent of the excess moneys available from a third party recovery. In the absence of any express statutory language or legislative history suggesting that our precedent was to be overruled, we decline to read the 1951 amendment of this statute as eliminating an employer's right to a credit to the extent that there are excess proceeds from a third party recovery.[3]

---

[3] The legislative history indicates that the General Assembly specifically addressed the effect of Supreme Court precedent on other areas of the Workers' Compensation Act but nowhere indicates an intent to alter the employer's right to a credit against the proceeds of third party recoveries.

We note that other states have enacted workers' compensation statutes establishing precise mechanisms that address an employer's right to reimbursement for unknown future benefits from the proceeds of third party actions.[4] The General Assembly could have adopted one of these statutory mechanisms but elected not to do so despite our existing precedent that implicates a continuing credit against any excess proceeds from the third party action.[5]

Finally, our conclusion that an employer is entitled to a credit for unknown future benefits against the net proceeds of a third party recovery comports with other well established principles of workers' compensation law. One of the purposes of the workers' compensation statute is "the avoidance of two independent compensations for the injury"; *Uva* v. *Alonzy,* 116 Conn. 91, 98, 163 A. 612 (1933); a proposition that we have recently reaffirmed. See *Paternostro* v. *Edward Coon Co.,* 217 Conn. 42, 47–49, 583 A.2d 1293 (1991).[6] If the plaintiff's argument were to prevail, a claim made subsequent to the disposition of a third party action would result in the employee receiving compensation from both the third party wrongdoer and the employer. In the absence of explicit statutory language mandating such a result, we decline to adopt such a construction.[7]

[4] See, e.g., New York Worker's Compensation Law § 29 (1990).

[5] "If the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the carrier for compensation paid, or compensation for which the carrier is liable, the correct holding is still that the excess of third party recovery over past compensation actually paid stands as a credit against future liability of the carrier." 2A A. Larson, Workmen's Compensation Law § 74.31 (e), p. 14-471.

[6] "The policy of avoiding a double recovery is a strong one, and has on occasion been invoked to override a result that might be thought required by a literal or technical interpretation of statutes . . . ." 2A A. Larson, Workmen's Compensation Law § 71.21, p. 14-16.

[7] The practical construction placed on General Statutes § 31-293 since the 1951 amendment lends further support to our conclusion. We recognize that workers' compensation law is practiced to a large extent by a

The judgment of the Appellate Court is reversed and the matter is remanded to that court with direction to render judgment affirming the decision of the compensation review division.

In this opinion PETERS, C. J., and BORDEN, J., concurred.

GLASS, J., with whom HULL, J., joins, dissenting. The majority holds that the silence of the legislature in connection with the enactment of General Statutes (Sup. 1951) § 1311b, which amended General Statutes (Sup. 1949) § 615a, both precursors of General Statutes § 31-293,[1] validated the decisions of this court constru-

---

specialized bar—both claimants' and insurers'. Legislative changes are often made at the behest of the principal economic constituencies which are the principal participants in the system—labor unions and the business and insurance community. Moreover, the commissioners, both at the hearing and appellate levels, who adjudicate workers' compensation disputes have, by virtue of their day-to-day experience, a large measure of legal expertise in the area.

It does not appear to be disputed that, until now, none of these actors understood the 1951 amendment to have altered the long-standing meaning of § 31-293 in the way suggested by the plaintiff. That understanding is reflected in the published commentary by a practitioner in the field: "If the employer is already obligated to make future payments and the present worth of those payments were used to calculate the employer's reimbursement claim, such payments must continue. If there is not a present obligation to make future payments, the employer is generally held to be released, *pro tanto* up to the amount that the injured employee actually recovered. Once the employee's claim for compensation benefits amounts to a sum greater than the amount recovered by the employee in the third party suit, the employer's liability for compensation payments and medical benefits commences again. This is generally referred to as a 'moratorium' on the collection of workers' compensation benefits." J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) p. 277.

If the 1951 amendment had been intended to change the preexisting credit system in the way claimed by the plaintiff, we would not have expected forty years of acquiescence to it by those parties and interests most affected and most familiar with that system. Yet the practical construction of forty years has been fully consistent with such acquiescence.

[1] General Statutes (Sup. 1951) § 1311b of the Workmen's Compensation Act provided: "LIABILITY OF THIRD PERSONS, HOW ENFORCED AND APPOR-

ing the language of the statute before the amendment
to grant an employer an indefinite future credit against

TIONED BETWEEN EMPLOYER AND EMPLOYEE. When any injury for which
compensation is payable under the provisions of this chapter shall have been
sustained under circumstances creating in some other person than the
employer a legal liability to pay damages in respect thereto, the injured
employee may claim compensation under the provisions of this chapter,
but the payment or award of compensation shall not affect the claim or
right of action of such injured employee against such other person, but such
injured employee may proceed at law against such person to recover dam-
ages for such injury; and any employer having paid, or by award having
become obligated to pay compensation under the provisions of this chap-
ter, may bring an action against such other person to recover any amount
that he has paid or by award has become obligated to pay as compensation
to such injured employee. If either such employee or such employer shall
bring such action against such third person, he shall forthwith notify the
other, in writing, by personal presentation or by registered mail, of such
fact and of the name of the court to which the writ is returnable, and such
other may join as a party plaintiff in such action within thirty days after
such notification, and, if such other shall fail to join as a party plaintiff,
his right of action against such third person shall abate. In the event that
such employer and employee shall join as parties plaintiff in such action
and any damages shall be recovered, such damages shall be so apportioned
that the claim of the employer, *as defined in this section,* shall take prece-
dence over that of the injured employee *in the proceeds of such recovery,
after the deduction of reasonable and necessary expenditures, including attor-
neys' fees, incurred by the employee in effecting such recovery. The rendi-
tion of a judgment in favor of the employee or the employer against such
party shall not terminate the employer's obligation to make further com-
pensation, including medical expenses, which the compensation commissioner
shall thereafter deem payable to such injured employee.* * * * If the dam-
ages, *after deducting the employee's expenses as provided above,* shall be
more than sufficient to reimburse *the employer,* damages shall be assessed
in his favor *in a sum* sufficient to reimburse him for * * * *his claim,* and
the excess shall be assessed in favor of the injured employee. * * * No com-
promise with such third person by either employer or employee shall be
binding upon or affect the rights of the other, unless assented to by him.
*For the purposes of this section, the employer's claim shall consist of (1) the
amount of any compensation which he has paid on account of the injury
which is the subject of the suit, and (2) an amount equal to the present worth
of any probable future payments which he has by award become obligated
to pay on account of such injury.* The word 'compensation,' as used in this
section, shall be construed to include not only incapacity payments to an
injured employee and payments to the dependents of a deceased employee,

the net proceeds recovered by an employee from a tort-feasor in a third party action. See, e.g., *Rosenbaum* v.

---

but also sums paid out for surgical, medical and hospital services to an injured employee and the *five hundred* dollar burial fee provided by law." (Emphasis in original.)

General Statutes (Sup. 1949) § 615a of the Workmen's Compensation Act provided: "LIABILITY OF THIRD PERSONS, HOW ENFORCED AND APPORTIONED BETWEEN EMPLOYER AND EMPLOYEE. When any injury for which compensation is payable under the provisions of this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or by award having become obligated to pay, compensation under the provisions of this chapter, may bring an action against such other person to recover any amount that he has paid or by award has become obligated to pay as compensation to such injured employee. If either such employee or such employer shall bring such action against such third person, he shall forthwith notify the other, in writing, by personal presentation or by registered mail, of such fact and of the name of the court to which the writ is returnable, and such other may join as a party plaintiff in such action within thirty days after such notification, and, if such other shall fail to join as a party plaintiff, his right of action against such third person shall abate. In the event that such employer and employee shall join as parties plaintiff in such action and any damages shall be recovered, such damages shall be so apportioned that the claim of the employer shall take precedence over that of the injured employee, and, if the damages shall not be sufficient, or shall be only sufficient to reimburse him for the compensation which he has paid, or by award has become obligated to pay, with a reasonable allowance for an attorney's fee to be fixed by the court and his costs, such damages shall be assessed in his favor; but, if the damages shall be more than sufficient to reimburse him, damages shall be assessed in his favor sufficient to reimburse him for the money he has paid, with a reasonable allowance for an attorney's fee to be fixed by the court and his costs, and the excess shall be assessed in favor of the injured employee. Such allowance for an attorney's fee shall include services rendered before the compensation commissioner, and in no case shall be less than the sum of twenty-five dollars. No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. The word 'compensation,' as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also sums paid out for surgical, medical and hospi-

*Hartford News Co.,* 92 Conn. 398, 103 A. 120 (1918). Because I disagree with the inference drawn by the

tal services to an injured employee and the * * * *four hundred fifty dollar* burial fee provided by law." (Emphasis in original.)

"[General Statutes] Sec. 31-293. LIABILITY OF THIRD PERSONS TO EMPLOYER AND EMPLOYEE. LIMITATIONS ON LIABILITY OF ARCHITECTS AND ENGINEERS. (a) When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. If either such employee or such employer brings such action against such third person, he shall forthwith notify the other, in writing, by personal presentation or by registered or certified mail, of such fact and of the name of the court to which the writ is returnable, and such other may join as a party plaintiff in such action within thirty days after such notification, and, if such other fails to join as a party plaintiff, his right of action against such third person shall abate. In any case in which an employee brings an action against a third party in accordance with the provisions of this section, and the employer is a party defendant in such action, the employer may join as a party plaintiff in such action. The bringing of any such action against an employer shall not constitute notice to such employer within the meaning of this section. If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee. If the damages, after deducting the employee's expenses as provided above, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section

majority from the legislature's silence, if it can be viewed as such, I respectfully dissent.

While the majority considers certain quoted portions of § 1311b to be worthy of note, it fails to note that the new language added to § 615a by § 1311b included the following highlighted insertion into the existing provision governing the allocation of a third party recovery: "In the event that such employer and employee shall join as parties plaintiff in such action and any damages shall be recovered, such damages shall be so apportioned that the claim of the employer, *as defined in this section,* shall take precedence over that of the injured employee in the proceeds of such recovery . . . ." (Emphasis in original; emphasis omitted.) Furthermore, the language added by § 1311b included, for the first

the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury. The word 'compensation,' as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also sums paid out for surgical, medical and hospital services to an injured employee, the one-thousand-dollar burial fee provided by law and payments made under the provisions of sections 31-312 and 31-313.

"(b) Notwithstanding the provisions of subsection (a) of this section, no construction design professional who is retained to perform professional services on a construction project, or any employee of a construction design professional who is assisting or representing the construction design professional in the performance of professional services on the site of the construction project, shall be liable for any injury on the construction project for which compensation is payable under the provisions of this chapter, unless responsibility for safety practices is specifically assumed by contract. The immunity provided by this subsection to any construction design professional shall not apply to the negligent preparation of design plans or specifications. For the purposes of this subsection 'construction design professional' means (1) any person licensed as an architect under the provisions of chapter 390, (2) any person licensed, or exempted from licensure, as an engineer under the provisions of chapter 391, or (3) any corporation organized to render professional services through the practice of either or both of such professions in this state."

time, a precise definition of the "claim" of the employer that was to take precedence over that of the employee in a third party recovery: "For purposes of this section, the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit, and (2) *an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury.*" (Emphasis in original; emphasis omitted.)

Before its amendment by § 1311b, § 615a merely stated that the employer's "claim," without further adorning that term, "shall take precedence over that of the employee" for purposes of apportionment of a third party recovery.[2] In the absence of any statutory language indicating the intended scope of an employer's "claim," the *Rosenbaum* court broadly construed that term to include a credit against an employee's third party recovery for both ascertained and inchoate future compensation obligations. The court's construction was "based on the legal relation of the parties as defined by the [statute]" as it existed prior to its amendment in 1951;[3] *Rosenbaum* v. *Hartford News Co.*, supra, 402; which it found to contemplate "not only the reimbursement of an employer who has paid compensation, but also his discharge from an ascertained or inchoate obligation to pay compensation, by the payment of damages directly to the injured employee. And *since the [statute] expressly provides that the claim of the employer shall take precedence over that of the employee, the employer is entitled to have the first moneys so paid to the employee applied to the discharge of his obligation.*" (Emphasis added.) Id., 403. Since the statute in

---

[2] See footnote 1, supra.

[3] The language of the provision construed in *Rosenbaum* v. *Hartford News Co.*, 92 Conn. 398, 103 A. 120 (1918), 1915 Public Acts, chapter 288, § 2, is identical in pertinent part to the language of General Statutes (Sup. 1949), § 615a, the statute in effect prior to the 1951 amendment.

effect at the time of *Rosenbaum* "[did] not take pains to deal explicitly with the problem of future benefits, but merely credit[ed] the carrier for compensation paid, or compensation for which the carrier [was] liable to pay," the conclusion reached in *Rosenbaum* was arguably "the correct holding," i.e., "the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier." 2A A. Larson, Workmen's Compensation Law § 74-31 (e), p. 14–471.

Unlike the ambiguous phraseology of § 615a, the language added to the statute by § 1311b "took pains" to deal with the problem of future benefits, and removed any doubts about the legislature's intentions as to the nature and extent of an employer's "claim." First, as the majority notes, § 1311b imposed a continuing obligation upon employers to pay compensation to their injured employees even after the rendition of judgment in a third party action. Second, as noted above, § 1311b mandated that the employer's claim that was to "take precedence over that of the injured employee" in the proceeds of a third party recovery "shall consist of" two components, one relating to compensation previously paid, and one relating to compensation to be paid in the future in satisfaction of the employer's new continuing future obligation. "For purposes of [§ 1311b]," the future component of an employer's claim, "as defined in [§ 1311b]," was unequivocally restricted to "an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury." (Emphasis omitted.) General Statutes § 1311b. Section 1311b, of course, was the only existing statutory provision that gave an employer any rights in his employee's recovery from a third party tortfeasor, as § 31-293 does presently. The language added by § 1311b therefore filled the statutory void that led the *Rosenbaum*

court to the sweeping conclusion that the statute "either reimburses or discharges the employer out of the first moneys available for the payment of damages." *Rosenbaum* v. *Hartford News Co.,* supra, 402.

In view of the explicit definition of an employer's "claim" added to the statute by the 1951 amendment, a definition clearly at odds with the expansive judicial construction of that term espoused by the *Rosenbaum* court and its pre-1951 progeny, I cannot agree with the majority that when the legislature amended the statute, it "made no attempt to alter our earlier construction of the statute, as set forth in *Rosenbaum,* that an employer was discharged from his obligations to the extent of excess moneys available from a third party recovery." "It is a well-recognized rule of statutory construction that the legislature is presumed to know all the existing statutes, the judicial interpretation of them, and the effect that its action or nonaction will have on them." *Mack* v. *Saars,* 150 Conn. 290, 298, 188 A.2d 863 (1963); see *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 593–94, 427 A.2d 425 (1980). " ' " '[I]t is always presumed to have intended that effect which its action or nonaction produces.' " ' " *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 197, 567 A.2d 1156 (1989). Rather than nonaction, the legislature took affirmative action in 1951 by promulgating an express definition of what an employer's claim "shall consist of" for purposes of precedence over that of an employee in the proceeds of a third party recovery. The future component of that claim was unambiguously defined to the exclusion of any amount other than that "equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury." General Statutes § 1311b. Consequently, the action taken in 1951 appears to be a classic effort by the legislature to enlighten the judicial understanding of its

intent by amending an ambiguous statute with language unmistakably manifesting its intent.[4] "The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we had previously interpreted a statute to confer." *State v. Blasko,* 202 Conn. 541, 558, 522 A.2d 753 (1987); see *Lee v. Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980).

Aside from the intent of the legislature inferable from its action in simultaneously confronting the problem of future benefits and curtailing the extent of an employer's preferential claim to a future credit for such benefits in spite of judicial precedent to the contrary, it is an established tenet of statutory construction that when a statute specifically defines an operative term used within it, courts are bound to accept that definition. *Plasticrete Block & Supply Corporation* v. *Commissioner,* 216 Conn. 17, 27, 579 A.2d 20 (1990); *Johnson v. Manson,* 196 Conn. 309, 315, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883 (1961); *Danbury* v. *Corbett,* 139 Conn. 379, 384, 94 A.2d 6 (1953); see also 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 20.08. The rationale underlying this rule is that the specific definition of a statutory term evinces the deliberate intent of the legislature to exclude what is not specifically included in the

---

[4] "It is an appropriate legislative function to define the words contained in a statute . . . . For matters already settled by litigation the legislature obviously cannot by statute alter the interpretation of the law so as to review and reverse a judicial decision. However, the legislature can, for purposes of future legislation and for future applications of past legislation, eliminate uncertainties in the legislative intent and in the meaning of words by amending prior acts and by inserting construction and definition sections in the law." 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 20.08.

definition. See *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974); *Neptune Park Assn.* v. *Steinberg,* 138 Conn. 357, 362, 84 A.2d 687 (1951). An analogous rule applies when the legislature designates by list or enumeration the items to which a statute refers, that is, the items listed or enumerated are intended to be exclusive. See *White Oak Corporation* v. *Department of Transportation,* 217 Conn. 281, 301, 585 A.2d 1199 (1991); *Chairman* v. *Freedom of Information Commission,* 217 Conn. 193, 200, 585 A.2d 96 (1991) ("[e]xpressio unius est exclusio alterius"); see also 2A J. Sutherland, supra, § 47.23. Both rules gather additional force when construing statutes, like §§ 1311b and 31-293, that are in derogation of the common law. See 2A J. Sutherland, supra; accord *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 137, 479 A.2d 231 (1984). When it enacted § 1311b, the legislature expressly defined an employer's "claim," enumerated its components and preceded that enumeration with the mandatory term "shall." See *Todd* v. *Glines,* 217 Conn. 1, 8, 583 A.2d 1287 (1991).

Applying these rules of construction to the unambiguous language of § 1311b, I am compelled to conclude that the legislature did not intend to permit an employer to assert an indefinite future credit against his injured employee's third party recovery for anything other than the mandated "amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury." (Emphasis omitted). General Statutes (Sup. 1951) § 1311b. It is not the function of this court " 'to supply a statutory omission merely because we feel there is good reason to do so' "; *American-Republican, Inc.* v. *Waterbury,* 183 Conn. 523, 529, 441 A.2d 23 (1981); and "[t]his is especially so where it appears that the omission was intentional. *State* v. *Nelson,* 126

Conn. 412, 416, 11 A.2d 856 [1940]." *Bailey* v. *Mars,* 138 Conn. 593, 598, 87 A.2d 388 (1952); *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128 (1948). "In such a situation, the remedy lies not with the court but with the General Assembly." *Bailey* v. *Mars,* supra.

The majority justifies its unwarranted departure from the boundaries of the definition added by § 1311b, and presently contained in § 31-293, on the ground that its decision comports with the equitable principle prohibiting two independent compensations to an employee for the same injury. While departure from an explicit statutory definition is warranted when necessary to avoid an irrational result that could not have been intended by the legislature; see *Vernon Village, Inc.* v. *Carothers,* 217 Conn. 130, 139–40, 585 A.2d 76 (1991); the majority has not explained why the possibility of an employee's double recovery ensuing from adherence to the statutory definition of an employer's "claim" is so irrational that it could not have been intended by the legislature. In fact, § 31-293 embodies a mechanism that sanctions just such a result when an employer fails to protect his reimbursement rights by intervening in his employee's third party action in a timely fashion. See General Statutes § 31-293. We have not wavered in strictly enforcing this provision despite the inevitable consequence of an employee's double recovery for the same injury. See *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 540–41, 582 A.2d 1174 (1990); *Skitromo* v. *Meriden Yellow Cab Co.,* 204 Conn. 485, 489, 528 A.2d 826 (1987); *Ricard* v. *Stanadyne, Inc.,* 181 Conn. 321, 323, 435 A.2d 352 (1980); *Olszewski* v. *State Employees' Retirement Commission,* 144 Conn. 322, 325, 130 A.2d 801 (1957). By doing so, we have recognized, as has the legislature, that the prohibition against double recovery is not inviolate. "Although one purpose of § 31-293 is to avoid double

recovery, it does not protect those who are less than vigilant in safeguarding their own legal rights." *Norwalk* v. *Van Dyke,* 33 Conn. Sup. 661, 667, 366 A.2d 554, cert. denied, 172 Conn. 681, 364 A.2d 864 (1976). The prohibition against double recovery should not be invoked in this case to protect employers who fail to assert their rights to a future credit for the amount permitted by the statute in a timely manner.[5]

Furthermore, the prohibition against double recovery should not be invoked for the benefit of such employers at the expense of injured employees who vigilantly pursue their rights against third party tortfeasors. An employee does not bring suit against a third party tortfeasor to ensure that his employer is reimbursed for his past or future compensation outlays. He sues the tortfeasor, rather, to collect damages to which he may be personally entitled under a common law tort theory of recovery, and which are unobtainable under the Workers' Compensation Act (act). See *Bartolotta* v. *United States,* 276 F. Sup. 66, 70 (D. Conn. 1967), aff'd, 411 F.2d 115 (2d Cir. 1969). An award under the act ordinarily compensates an employee for the impairment to his wage earning capacity resulting from his injury. See 1 A. Larson, Workmen's Compensation Law § 2.40, p. 10; 2 A. Larson, supra, § 57.11,

---

[5] It would not be unduly burdensome to require an employer to protect his claim to a future credit against an employee's third party recovery by a timely assertion of that claim in "an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury." General Statutes § 31-293. That the present value of probable future compensable expenses is susceptible to calculation is evident from the fact that in ordinary tort actions, future economic damages are routinely subjected to proof by statistical data. Employers could utilize such data to ascertain probable future compensation payments, subject to the approval of the commissioner, who presumably possesses special expertise in matters of valuation. The commissioner "shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of [the Workers' Compensation Act]." General Statutes § 31-278.

p. 10-12, § 57.14 (a), p. 10-46; see also *Ancona* v. *Norwalk,* 217 Conn. 50, 55, 584 A.2d 454 (1991); *Czeplicki* v. *Fafnir Bearing Co.,* 137 Conn. 454, 456, 78 A.2d 339 (1951); *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 303, 135 A. 574 (1926). Unlike a tort recovery, such an award offers little or no redress to the employee for the physical injury itself, the loss of functional ability or the pain and suffering accompanying the injury. *Sherburne* v. *C. S. Mersick & Co.,* 35 Conn. Sup. 60, 62, 395 A.2d 351 (1977); see also 1 A. Larson, supra; 2 A. Larson, supra, § 57.11, p. 10-2. In other words, the act "does not pretend to restore to the [employee] what he has lost . . . ." 1 A. Larson, supra, § 2.50, p. 11.

Although an employee's net recovery in a third party action under § 31-293 may also include damages for past and future economic losses over and above the minimum amounts authorized by the act; see *Sherburne* v. *C. S. Mersick & Co.,* supra; a substantial amount of that recovery unquestionably represents sums to which the employee, alone, is entitled by virtue of the tort inflicted upon him. Yet, in disregard of the potential composition of such a recovery, the majority authorizes a "required" credit against the full amount of that recovery. The employee therefore loses the exclusive right to any amount of that recovery, and the employer enjoys a continued holiday from his otherwise extant future compensation obligations by periodically crediting that recovery, regardless of whether the credit taken exceeds that portion of the recovery representing probable future compensable expenses. Unless and until such expenses exceed the employee's total recovery, the employer cannot lose. The employee confronted with improbable future compensable expenses, however, undoubtedly loses. He is forced to fund such expenses with sums potentially intended as recompense for his pain, suffering and other noneco-

nomic losses resulting from his injuries. If he lacks the willpower to bank his recovery for the unexpected medical crisis, his future injuries, to the extent that the employer's credit remains unused, could go untreated. This inequitable scenario certainly could be avoided by requiring employers, as contemplated by the statute, to ascertain probable future compensation payments by award at or before the conclusion of a third party action or settlement.

When faced with the choice as to who, as between employer and employee, should bear the financial risk of compensable future economic expenses improbable at the conclusion of a third party action or settlement, it would not have been altogether irrational for our legislature to have intended to tip the scales in a manner favorable to the financially inferior employee. "The purpose of workmen's compensation law is to provide for the workman, and it is presumed that the General Assembly acted with the knowledge that the objective in enacting such legislation was to protect the employee." *Going* v. *Cromwell Fire District,* 159 Conn. 53, 59, 267 A.2d 428 (1970); see *Klapproth* v. *Turner,* 156 Conn. 276, 281, 240 A.2d 886 (1968). In fact, the legislative history discloses that it was this precise objective that the General Assembly intended to achieve when it enacted § 1311b. The record of the discussions on the floor of the House of Representatives[6] and before the labor committee[7] reveals that § 1311b was enacted along with numerous other amendatory

---

[6] "Statements made on the floor of the house, although not controlling, may be judicially noticed and are a strong indication of legislative intent." *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 276, 524 A.2d 621 (1987).

[7] "Although there is earlier authority to the contrary . . . in recent years we have repeatedly approved references to testimony before legislative committees in order to shed light on legislative intent." *State* v. *Magnano,* 204 Conn. 259, 273–74 n.8, 528 A.2d 760 (1987); see *Mahoney* v. *Lensink,* 213 Conn. 548, 559 n.15, 569 A.2d 518 (1990).

provisions designed to provide additional protections "for 750,000 workers of the state of Connecticut."[8] Remarks of Representative Anthony Miller, 4 H.R. Proc., Pt. 5, 1951 Spec. Sess., p. 1957; see generally Public Acts 1951, No. 354. This benevolent goal is reflected in the statement of purpose of the bill[9] that contained the language ultimately added to the statute by § 1311b: "To extend and increase the benefits of the Workmen's Compensation Law." S. Bill 14 (1951 Sess.).

Consistent with this objective, and of considerable significance for our current purposes, the legislative

---

[8] On the floor of the House of Representatives, Representative Simon Cohen remarked: "It happens that there are responsible people representing the labor groups and representing members of the labor committee who have had conferences on this bill for several weeks. We are all trying to obtain proper legislation which will be for the benefit of all the workers of the State of Connecticut." 4 H.R. Proc., Pt. 5, 1951 Spec. Sess., pp. 1957–58. Cohen noted further: "The bill was amended in the Senate to take out several abuses that we have had and we have put in provisions to prevent these abuses for the benefit of all the workers, not for four or five thousand of them." Id., p. 1993. Cohen also stated: "[T]he labor committee and your Chairman and all the members have worked very diligently, very hard, to try to get progressive legislation on the books of the State of Connecticut providing for better conditions under Workmen's Compensation . . . . We knew that [this bill] would be a very far advance as far as labor legislation in the State of Connecticut is concerned." Id., pp. 1991–92. This theme was reiterated in the remarks of Representative Louis Shapiro: "The bill does make decided advancements in the benefits under workmen's compensation law." Id., p. 1996.

Before the labor committee, the testimony given included favorable statements by all senators and representatives who spoke on the proposed legislation, and a labor representative of the C.I.O. Conn. Joint Standing Committee Hearings, Labor, 1951 Sess., pp. 31–35. Those who spoke in opposition to the proposed legislation were the Manufacturers' Association of Connecticut, the Association of Casualty and Surety Companies, the Aetna Casualty and Surety Company, the U.S. Rubber Company, the Sargent Company and the Niles-Bement Pond Company. Id., pp. 35–36, 38, 44, 47–48.

[9] "The statement of purpose of a bill, on its introduction into the legislature, may be considered in determining its intent." *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 274–75, 524 A.2d 621 (1987).

history further indicates that during the same session that the draft version of § 1311b, Senate Bill 14, § 2 (1951 Sess.), was considered and passed by both houses of the legislature,[10] the legislature had before it two other companion bills containing proposed amendatory language that, if approved, effectively would have codified the indefinite future credit principle announced in *Rosenbaum*.[11] See H. Bill 808, § 3 (1951 Sess.); S. Bill 444, § 3 (1951 Sess.). That language, reproduced in the margin,[12] is strikingly similar to the language of the New York version of § 31-293 in force in 1951, also reproduced in the margin,[13] which the majority cor-

---

[10] Substitute House Bill 1436, § 1 (1951 Spec. Sess.), was passed by the House of Representatives in lieu of Senate Bill 14, § 2 (1951 Sess.). See H. Jour., June 6, 1951, p. 854; S. Jour., May 15, 1951, p. 599.

[11] We have previously acknowledged the inferential value of failed attempts to amend existing laws with respect to the intent of the legislature to acquiesce in prevailing judicial interpretations of such laws. See *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 334 n.13, 471 A.2d 646 (1984); *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4 (1955); see generally 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 48.18; D. O'Connor, "The Use of Connecticut Legislative History in Statutory Construction," 58 Conn. B.J. 422, 437–39 (1984).

[12] House Bill 808, § 3, and Senate Bill 444, § 3, each contained, in addition to language similar to that proposed by Senate Bill 14, § 2, the following proposed amendatory language: "In the event of a modification of an award made pursuant to this chapter, increasing the compensation previously awarded, *the principal of any excess [third party] recovery, if any, received theretofore by the injured employee or his dependents shall be credited against such increase or excess.* In the event of a modification of an award diminishing the compensation previously awarded, the employer shall forthwith pay to the injured employee or his dependents any additional amount of such excess to which the injured employee or his dependents shall be entitled by reason of such modification." (Emphasis added.)

[13] The relevant language of the New York statute is as follows: *"In the event of a modification of an award increasing the compensation previously awarded . . . the principal of any of* such *excess [third party] recovery theretofore paid to such injured employee or his dependents shall be credited against such increase or such excess. In the event of a modification of an award* ending or *diminishing the compensation previously awarded . . .* such . . . person . . . *shall forthwith pay to such injured employee or his dependents,* as the case may be, *any additional amount of such excess recovery to which such injured employee or his dependents may be entitled*

rectly identifies as a statute that grants to employers the indefinite right to reimbursement for unknown future benefits from the proceeds recovered by an employee in a third party action. House Bill 808 was referred at the end of the 1951 legislative session to the labor committee, where it died. See H. Jour., Jan. 26, 1951, p. 200. After receiving an unfavorable report from the labor committee, Senate Bill 444 was debated on the floor of the Senate and voted down. See S. Jour., May 15, 1951, p. 603. "[T]he rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied in the rejected amendment." 2A J. Sutherland, supra, § 48.18.[14] Accordingly, the rejection of the amendments proposed by these bills in favor of a bill devoid of the unacceptable language is persuasive evidence, in addition to the intent of the legislature expressed in the clear language of § 1311b, that the legislature did not intend the future component of an employer's claim to extend beyond what was specified in § 1311b to encompass an indefinite future credit as permitted by this court in *Rosenbaum.*

In sum, all textual, historical and policy evidence of the legislature's intent in enacting § 1311b consistently point to the same conclusion: that the legislature intended to supplant the broad pre-1951 judicial precedent with a narrowly formulated definition of the future component of an employer's "claim" that would accrue

---

by reason of such modification . . . ." (Emphasis added.) N.Y. Workmen's Compensation Law § 29 (3) (McKinney 1946).

[14] While Sutherland cautions that "such rejection may occur because the bill already includes those provisions," this admonition hardly applies in the present case since the language of Senate Bill 14, § 2, which was approved without the rejected language, is cast in both exclusionary and mandatory terms: *"For purposes of this section,* the employer's claim *shall consist of"*; (emphasis in original; emphasis omitted); "the claim of the employer, *as defined in this section, shall* take precedence over that of the injured employee . . . ." (Emphasis added.) S. Bill 14, § 2 (1951 Sess.); see also H. Bill 1436, § 1 (1951 Spec. Sess.).

to the benefit of the working population of this state. Adherence to that definition today would serve the same viable purpose by requiring employers, as contemplated by the statute, to ascertain their claims to a credit for "the present worth of any probable future payments" at or before the conclusion of a third party action or settlement and secure the commissioner's approval of such claims by award. General Statutes § 31-293. An employee could thus obtain a fair and final determination of the amount of his third party recovery that represents probable future compensation and must be reserved for that purpose, and the amount that he, exclusively, is entitled to use as he sees fit. Should improbable future compensable expenses arise in excess of an employer's credit, the burden of making compensation for such expenses would be borne by the employer, thereby "lifting from the shoulders of unfortunate victims of industrial mishaps and their dependents some measure of the resulting burden, and casting it upon the industry which occasioned it and, through that industry, upon society at large. It is not the immediate employer who, by this procedure, ultimately bears the burden that he is in the first instance made to assume. In its final distribution society bears it." *Piccinim* v. *Connecticut Light & Power Co.*, 93 Conn. 423, 429, 106 A. 330 (1919). Construing § 31-293 in accordance with its plain language would both further these socio-economic and humanitarian goals and adequately protect the reimbursement rights of an employer who is vigilant in protecting his own rights. If "the statute in its present form is apt to work an injustice, that is something for the legislature to cure. It does not require modification of the terms of the statute by the courts for the sake of accomplishing what might appear to be justice." *General Tires, Inc.* v. *United Aircraft Corporation*, 143 Conn. 191, 196, 120 A.2d 426 (1956).

Finally, we should not stray from the plain language of § 31-293 merely because the workers' compensation commissioner, in his practice,[15] has obfuscated the manifest intent of the legislature by adhering to our superseded precedents. See *Nichols* v. *Warren,* 209 Conn. 191, 203, 550 A.2d 309 (1988); accord *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities,* 204 Conn. 287, 295, 528 A.2d 352 (1987) (agency interpretation of statute not previously subjected to judicial scrutiny not entitled to deference); see also *Beauchesne* v. *Nimmo,* 562 F. Sup. 250, 256 (D. Conn. 1983) (agency interpretation inconsistent with legislative intent manifested in plain language of statute not entitled to deference). While the long-standing interpretation placed on a statute by the agency charged with its enforcement is ordinarily entitled to great deference, "this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." *International Brotherhood of Teamsters* v. *Daniel,* 439 U.S. 551, 567 n.20, 99 S. Ct. 790, 58 L. Ed. 2d 808 (1979); accord *Downer* v. *Liquor Control Commission,* 134 Conn. 555, 561, 59 A.2d 290 (1948) (agency's long-standing yet erroneous interpretation of statute attributable to "misunderstanding on [its]

---

[15] In this respect, it should be noted that other than the mere assertions in the briefs of the appealing employer and the amici curiae insurers, the record contains no evidence that the commissioner has uniformly engaged in the practice of granting an indefinite future credit to employers for any period of time. See 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 49.05. The 1987 decision of the commissioner in this case was primarily based on his reading of pre-1951 judicial precedent, not long-standing practice. The compensation review division (CRD) upheld the commissioner's decision on the basis of its earlier decision upholding an award of future credit in *Love* v. *J. P. Stevens & Co.,* Compensation Review Divsion, Case No. 378 CRD-7-85, November 10, 1988. The articulated grounds for the CRD's decision in *Love* were pre-1951 judicial precedent, the statements of commentators, and a 1986 decision of the CRD wherein "[a]ll parties . . . appeared to view the credit issue as being one of settled law."

part"). Courts must not " 'rubber-stamp . . . administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the [legislative] policy underlying a statute.' " (Citation omitted.) *Bureau of Alcohol, Tobacco & Firearms* v. *Federal Labor Relations Authority,* 464 U.S. 89, 97, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983). "If the intent of [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]." *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984); see *Transbrasil S.A. Linhas Aereas* v. *Department of Transportation,* 791 F.2d 202, 206–207 (D.C. Cir. 1986).

For the above reasons, I would affirm the judgment of the Appellate Court.