[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
This action was filed by the plaintiff to recover damages from an individual defendant and his employer. The employer entered this action pursuant to Section 31-293 as an Intervening Plaintiff. The complaint alleged amounts were paid as workmen's compensation but left that amount blank.
The plaintiff now moves to dismiss claiming no moneys were expended as benefits for the injury which is the subject of this suit.
Prior to the November 1991 accident the plaintiff had accidents in July and August of 1991. In September 1992 Gatti filed a worker's compensation claim for the November 1991 accident and on the same date for the July and August accidents.
The employer's carrier contested the July and August incidents claiming they were not covered. The parties entered into a stipulation in January 1993 and a voluntary agreement to try to resolve their disputes.
1.
Section 31-293 place three general requirements on an intervening party. The intervening plaintiff must allege that the plaintiff was employed by the intervening plaintiff, the intervening plaintiff must allege it paid money for compensation and may be obliged to pay future sums and the intervention must have been made in a timely fashion.
There is no doubt that the defendant Hartford Distributors as intervening plaintiff is Mr. Gatti's employer. There is no claim that the time limits set forth in the statute for intervention were not met. CT Page 2264
The plaintiff Gatti's claim seems to in part be that by not specifying an amount certain in a paragraph of its pleading which has a space for such an assertion (i.e. $ _____) the intervening plaintiff has no standing. In its brief of October 11, 1994 Gatti argues: "Reviewing the intervening complaint you find that the allegation of the benefits paid is a sum total of ZERO. Hartford Distributors has not alleged that any benefits have been paid."
Thus argues the plaintiff Gatti Hartford Distributors has no standing to sue and when a party has no standing to sue the court is without jurisdiction. Gatti cites Conn.Business Industry Assoc. v. CHHC, 218 Conn. 335 (1991),Tomlinson v. Board of Education, 226 Conn. 704 (1993),Belford v. City of New Haven, 170 Conn. 46 (1975), cf. Flastv. Cohen, 392 U.S. 83 (1968).
In large part the plaintiff Gatti's argument is purely semantic. The Intervening Complaint does allege sums were expended but then when it goes on to say the sum actually expended, it states sums were expended in the amount of "$ _____," and fails to fill in the amount. The plaintiff misconstrues the cases he cites. All those cases stand for is the proposition that before you set the machinery of the courts in motion you have to show that you have suffered a real injury or you must be asking the court to prevent such an injury form occurring. Thus in Belford the plaintiff's status as a taxpayer did not permit him to sue the city trying to enjoin it from building a rowing course. The court said some pecuniary injury must be shown such as an increase in taxes or other identifiable injury. As Flast
says the courts try to see if a party "has a personal stake in the outcome of the controversy" 392 Conn. at Page 101. The courts do not want to deal with hypothetical disputes, they want issues presented in an adversarial context so they may be fully developed. Other types of standing cases arise in a statutory context. A statutory right is created and the courts may hold a party has no standing because the statute is held to give rights only to a defined class, cf.Johndrow v. State, 24 Conn. App. 719, 721 (1991).
Nothing in Section 31-293 requires that an intervening employer has to even set forth an exact monetary amount it CT Page 2265 has paid prior to the intervention in the actual complaint, it just says "the claim of the employer shall consist of (1) the amount of any compensation which he (sic) has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he (sic) has by award become obligated to pay on account of the injury".[1] The statute doesn't set forth a di minimis amount below which an employer can't intervene. If he's paid the employer has a claim. If the employer alleges it has paid an unspecified amount it in effect alleges a pecuniary interest in the outcome of the litigation and that's all that is required for standing. Certainly under these circumstances noJohndrow problem is raised — the intervening plaintiff as an employer is certainly within that class of parties to whom Section 31-293 sought to give the right of intervention.
The court concludes from the face of the pleading no jurisdictional question is raised.
2.
The plaintiff Gatti still presses its jurisdictional attack and argues that the stipulation and voluntary agreement entered into between the parties precludes any claim that benefits were paid as a result of the November 6, 1991 accident.
Despite the argument of both sides I do not find the stipulation a model of clarity. It was obviously entered into because of an ongoing dispute as to whether two previous accidents, July and August 1991, were covered by the act. It would not seem plausible that in light of that dispute and the characterizations of the dispute in the stipulation that $56,000 would have been paid out under worker's compensation for these accidents. Certainly there is nothing in the language of the stipulation which would indicate the employer or insurer by this agreement were in effect recognizing the two prior accidents were compensable under the act. Language in the stipulation supports Hartford Distributor's position. On page 3 it says the payment of one dollar "shall be made and accepted in full and final settlement of all compensation for said injuries . . ." and then it goes on to say "that none of the CT Page 2266 parties thereafter shall have any further claims . . " (under the act) . . as a result of the alleged accident."
On the other hand on page 2 it states that pursuant to the stipulation the employer and insurer "shall pay to the claimant in addition to the compensation and medical benefits already paid by respondents the further sum of" one dollar. On page 3 it says: "It is expressly understood and agreed that the payment of said (one dollar) is in full accord and satisfaction of a disputed claim except as stated aforesaid . . ."
What does the language "in addition to the compensation and medical benefits already paid" mean? These words after all are words of art signifying payments under the act. Could they just refer to payments made for the November 6, 1991 accident? Were there other "proceeds" paid out when the stipulation was signed above and beyond the "one dollar" which are separate and distinct from the $56,000 and the one dollar?
On the other hand Hartford Distributors has submitted an affidavit by the person responsible for paying compensation benefits to Gatti and this man swears that the sum of $59,948.27 has been paid out to Gatti as a result of the November accident. A payment log is attached to the affidavit. It could be said these statements are self-serving but no counter-affidavits have been filed and Gatti seems to be relying on the language of the stipulation to make his point.
But the jurisdictional question does not turn only on a resolution of these issues. In February of 1993 the parties entered into a voluntary agreement filed with the Workers' Compensation Commission. Pursuant to this agreement as regards the November accident the employer stipulated it was "liable to pay for 2/3 of medical expenses and claimant to pay 1/3." The document in the box entitled "Date of injury" says "11/6/91 (aggravation of prior 7/91 and 8/91 accidents which accidents are not compensable by agreement."[2] Section 31-293 says that in addition to amounts paid the employer can assert claims consisting of "an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury." The voluntary CT Page 2267 agreement of February was approved by the Commissioner. Section 31-296 makes it clear that such an agreement is then binding on the parties. The employer by the agreement has obviously become obligated to pay future payments to Gatti. I do not believe the right of intervention as such can in effect be denied because at the time of intervention as opposed to the time when the litigation is resolved the employer can't make an exact estimate of the present worth of future payments. Nothing in Enquist v. General Datacom,218 Conn. 19 (1991) would in my opinion require such a result so severely restricting the right of intervention and foiling an important purpose of the act which is to prevent an employee from receiving double recovery id at page 26.
At this point the plaintiff has made no further argument for its jurisdictional claim but refers to a general right to have an evidentiary hearing to contest jurisdiction for reasons he does not set forth and without reference to any evidence or facts he might wish to bring to the court's attention. The plaintiff has not set forth "facts not apparent on the record" which would entitle him to an evidentiary hearing. (P.B. § 143). Where the moving party makes a jurisdictional attack, before an evidentiary hearing is required, this practice book provision requires that a prima facie showing of the jurisdictional issue be set forth by way of affidavit. This would seem to be dictated by common sense. If the notion behind lack of standing is that the so-called machinery of the court should not be put into operation by a party without a recognized legal interest in the litigation it certainly makes sense that that machinery also should not be started up unless the party claiming a standing problem sets forth a prima facie bases to assert it.
The motion to dismiss is denied.
Corradino, J.