# JANICE THOMAS *v.* DEPARTMENT OF DEVELOPMENTAL SERVICES ET AL.
## (SC 18458)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued February 23—officially released July 13, 2010

*Christopher D. DePalma,* for the appellant (plaintiff).

*Yinxia Long,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Philip Schulz,* assistant attorney general, for the appellee (named defendant).

*Opinion*

ZARELLA, J. The issue in this workers' compensation appeal is whether the statutory lien provision contained in General Statutes § 31-293 (a)[1] entitles an employer

---

[1] General Statutes § 31-293 (a) provides: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having

## to a credit for unknown, future workers' compensation

become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. In any case in which an employee brings an action against a party other than an employer who failed to comply with the requirements of subsection (b) of section 31-284, in accordance with the provisions of this section, and the employer is a party defendant in the action, the employer may join as a party plaintiff in the action. The bringing of any action against an employer shall not constitute notice to the employer within the meaning of this section. If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. Each employee who

benefits that it may become obligated to pay to an injured employee in the amount of the net proceeds that the injured employee has received from a judgment against or settlement with a third party tortfeasor. The plaintiff, Janice Thomas, appeals from the decision of the compensation review board (board), which reversed the decision of the workers' compensation commissioner for the eighth district (commissioner) and concluded that the statutory lien provision entitles employers to such a credit. The plaintiff claims that the board improperly interpreted the statutory lien provision as applying to future workers' compensation benefits and that the correct interpretation limits the scope of the lien to the amount of benefits paid by the employer to the injured employee up to the date of recovery from the third party. The named defendant, the department of developmental services,[2] responds that the board correctly concluded that the statutory

brings an action against a party in accordance with the provisions of this subsection shall include in his complaint (A) the amount of any compensation paid by the employer or the Second Injury Fund on account of the injury which is the subject of the suit and (B) the amount equal to the present worth of any probable future payments which the employer or the Second Injury Fund has, by award, become obligated to pay on account of the injury. Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement."

[2] GAB Robins of North America, Inc. (GAB Robins), the workers' compensation administrator for the state of Connecticut, also was named as a defendant in the present case. GAB Robins did not participate in this appeal. In the interest of simplicity, we refer to the department of developmental services as the defendant throughout this opinion.

lien provision includes a right to a credit for future workers' compensation benefits in light of the lien provision's context and prior case law interpreting § 31-293 (a). We agree with the defendant and, therefore, affirm the decision of the board.

The record reflects the following relevant facts and procedural history. On January 29, 2004, the plaintiff, an employee of the defendant at all relevant times, sustained various injuries when she fell on an icy walkway leading to her workplace. As a result of these injuries, the plaintiff filed a claim for workers' compensation benefits, which the defendant initially accepted.[3] In addition, the plaintiff asserted a third party liability claim pursuant to § 31-293 (a). The plaintiff did not, however, file an action in connection with her third party claim because she opted, instead, to negotiate her claim with the third party's insurance carrier. The defendant did not file an action against the third party either. Rather, the defendant issued a letter to the plaintiff's counsel indicating that it was claiming a lien, pursuant to § 31-293 (a), against the proceeds from the plaintiff's third party claim and documenting that the defendant then had paid $2523.43 in workers' compensation benefits to or on behalf of the plaintiff.[4]

---

[3] In April, 2004, the defendant denied all further workers' compensation benefits to the plaintiff on the basis of a written statement from one of the plaintiff's coworkers that questioned the circumstances of the plaintiff's fall. Specifically, the coworker stated that, on the date of the plaintiff's fall, the coworker had taken great pains to sand the icy walkway leading to the defendant's building. In addition, the coworker apparently intimated that the plaintiff may have fallen at her condominium residence rather than at work. On August 17, 2006, the commissioner found in favor of the plaintiff, concluding that the plaintiff had been injured in the scope and course of her employment and was entitled to workers' compensation benefits.

[4] There is no evidence in the record that the defendant gave written notice of its lien to the third party tortfeasor. General Statutes § 31-293 (a) specifically provides that, in order to perfect its lien, an employer must give written notice to "the party"—i.e., the third party tortfeasor—prior to judgment for or settlement with the employee. At oral argument, the plaintiff's counsel acknowledged that any claim regarding the defendant's failure to notify the third party tortfeasor was not raised before the commissioner,

On November 1, 2005, the plaintiff settled her third party claim in the amount of $45,000. After deducting attorney's fees and costs, and reimbursing the defendant for the then outstanding lien of $2523.43, the plaintiff netted $24,713.37 from the third party settlement. Following the settlement, the parties disputed the scope of the defendant's lien. At a hearing before the commissioner, the defendant claimed that its lien entitled it to a credit for unknown, future workers' compensation benefits that it may become obligated to pay to the plaintiff in the full amount of the plaintiff's net proceeds from the third party settlement. The plaintiff opposed the claim, arguing that the scope of the lien provision of § 31-293 (a) did not encompass such a credit.

On November 14, 2007, the commissioner ruled in favor of the plaintiff. The commissioner noted that § 31-293 (a) creates separate rights of subrogation and rights to establish a lien, and the lien provision is silent with respect to the issue of whether an employer is entitled to a credit for future workers' compensation benefits that it may become obligated to pay to a claimant. On the basis of the foregoing and, in the words of the commissioner, a "strict construction of [§] 31-293 . . . and applicable case law," the commissioner concluded that the defendant was not entitled to such a credit for future workers' compensation benefits.

The defendant appealed from the commissioner's decision to the board, which reversed the commissioner's decision. In its decision of October 22, 2008, the board acknowledged that the lien provision was silent with respect to its scope; the board concluded, however, that it could discern its meaning by reading the lien provision in light of § 31-293 (a) as a whole. Viewing

the board or in the briefs submitted to this court. Accordingly, we decline to review it. See *Pascarelli* v. *Moliterno Stone Sales, Inc.,* 44 Conn. App. 397, 401, 689 A.2d 1132, cert. denied, 240 Conn. 926, 692 A.2d 1282 (1997).

the lien provision in this light, and considering the public policy discouraging a claimant's double recovery, the board concluded that the defendant's lien encompassed the entire amount of the plaintiff's net proceeds from the third party settlement and that such proceeds were to be credited against future workers' compensation benefits that the defendant may become obligated to pay to the plaintiff. This appeal followed.[5]

On appeal, the plaintiff claims that the statutory lien provision in § 31-293 (a) is ambiguous because the provision is silent with respect to its scope and is susceptible to more than one reasonable interpretation. The plaintiff argues that the language in the lien provision reasonably can be interpreted as applying to only those benefits that an employer has paid to date, and not to unknown, future benefits. Specifically, the plaintiff contends that, because the language in the lien provision does not mirror the language in that portion of § 31-293 (a) defining an employer's "claim," which term previously has been interpreted to include unknown, future benefits; see *Enquist* v. *General Datacom*, 218 Conn. 19, 20–21, 26, 587 A.2d 1029 (1991); the lien provision should not be interpreted in a like manner. The plaintiff further argues that the notion that a double recovery necessarily arises whenever a claimant settles with a third party tortfeasor is "fundamentally flawed," and, therefore, the public policy disfavoring double recoveries should not be invoked in the present case. Finally, in light of the fact that this court has not yet interpreted the scope of an employer's rights under the lien provision, the plaintiff argues that the defendant has waived any claim that it might have to a credit for future workers' compensation benefits because it was "less than vigilant" in protecting its rights by taking

---

[5] The plaintiff appealed to the Appellate Court from the decision of the board, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the less prudent and easier course of action of merely sending a letter of notification of the lien, rather than filing an action directly against the third party tort-feasor.

The defendant responds that the board correctly concluded that the statutory lien provision includes a right to a credit for future workers' compensation benefits on the basis of sound statutory construction principles, including that the lien provision must be read in context and in light of case law interpreting § 31-293 (a). The defendant further claims that the board's interpretation is supported by the legislative history and comports with the legislature's goals of cutting the costs of the workers' compensation program and avoiding double recoveries by injured employees. Lastly, the defendant asserts that the plaintiff's interpretation of the lien provision is untenable because it flows from the plaintiff's position that the provision must be read separately from the rest of § 31-293 (a), and would lead to absurd results. We affirm the decision of the board.

"Under our well established standard of review, [w]e have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that . . . deference . . . to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 108–109, 942 A.2d 396 (2008).

Neither this court nor the Appellate Court has examined the scope of the statutory lien provision contained in § 31-293 (a). In addition, the board did not indicate that it had applied a time-tested interpretation of the statute in its decision. "Accordingly, we do not defer to the board's construction and exercise plenary review in accordance with our well established rules of statutory construction." (Internal quotation marks omitted.) Id., 109.

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009). "In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id. "When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 66, 946 A.2d 862 (2008). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 779, 961 A.2d 349 (2008).

The lien provision contained in General Statutes § 31-293 (a) provides in relevant part: "Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer . . . a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer . . . pursuant to the provisions of this chapter, the employer . . . shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer . . . shall give written notice of the lien to the party prior to such judgment or settlement."

At the outset, we note that the lien provision is silent with respect to its scope. Although "[statutory] silence does not . . . necessarily equate to ambiguity"; *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004); we conclude that this silence renders the provision ambiguous with respect to its scope "because there is more than one plausible interpretation of its meaning." *Stuart* v. *Stuart*, 297 Conn. 26, 37, 996 A.2d 259 (2010). "Accordingly, we may consider the full panoply of available materials with which to interpret the statute." Id.

We begin our analysis with an overview of the statute and our prior case law interpreting its provisions. "[Section 31-293 (a)] provides, in substance, that an employee who sustains an injury arising out of and in the course of his employment, by reason of the fault and neglect of a third party, may claim compensation under the [Workers' Compensation] Act without prejudice to his common-law right to sue the [tortfeasor] . . . ." (Internal quotation marks omitted.) *Enquist* v. *General Datacom*, supra, 218 Conn. 22–23. Section 31-293 (a) also provides various procedures by which an employer, who has paid or by award has become obligated to pay

workers' compensation benefits, may seek reimbursement of such benefits. The statutory lien provision at issue in the present case is one such procedure. This particular provision was enacted as an amendment to § 31-293 (a) in 1993. See Public Acts 1993, No. 93-228, § 7 (P.A. 93-228). Prior to P.A. 93-228, § 7, § 31-293 (a) provided only two ways in which an employer could recover workers' compensation benefits payable to an employee; the employer either could intervene in the employee's action against the third party tortfeasor or could bring its own action directly against that tortfeasor. See *Libby* v. *Goodwin Pontiac-GMC Truck, Inc.*, 241 Conn. 170, 178, 695 A.2d 1036 (1997).

We previously interpreted the scope of an employer's claim under § 31-293 (a) prior to the enactment of P.A. 93-228, § 7, and held that an employer's claim includes a credit for unknown, future workers' compensation benefits, even though the statute is silent with respect to such a credit. See *Enquist* v. *General Datacom*, supra, 218 Conn. 20–21, 26; cf. *Libby* v. *Goodwin Pontiac-GMC Truck, Inc.*, supra, 241 Conn. 178–79. *Enquist* is the seminal case deciding this issue. Our holding in *Enquist* was based on our interpretation of the language contained in the 1951 amendment to a predecessor of § 31-293 (a); see Public Acts 1951, No. 354, § 1; in light of our prior case law interpreting the Workers' Compensation Act (act). See *Enquist* v. *General Datacom*, supra, 23–24.

Specifically, we noted in *Enquist*: "In 1951, the General Assembly amended [General Statutes (Sup. 1949) § 615a, a predecessor to § 31-293 (a)] to add the following language: 'The rendition of a judgment in favor of the employee or the employer against such party *shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner shall thereafter deem payable to such injured employee.*' . . . [Public

Acts 1951, No. 354, § 1, codified at General Statutes (Sup. 1951) § 1311b.] This new provision was a response to our earlier holdings to the effect that a recovery against a third party that exceeded the compensation benefits paid, terminated absolutely an employer's obligation to make further compensation payments. See *Stavola* v. *Palmer*, 136 Conn. 670, [680] 73 A.2d 831 (1950); *Mickel* v. *New England Coal & Coke Co.*, 132 Conn. 671, [678–79] 47 A.2d 187 (1946); *Rosenbaum* v. *Hartford News Co.*, [92 Conn. 398, 401–402, 103 A. 120 (1918)]. As a further addendum, however, the legislature provided that 'the *employer's claim* shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit, and (2) *an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury.*' " (Emphasis in original.) *Enquist* v. *General Datacom*, supra, 218 Conn. 23–24, quoting General Statutes (Sup. 1951) § 1311b. The 1951 statute further provided that "the *claim of the employer* . . . shall take precedence over that of the injured employee in the proceeds of such recovery" and that, "[i]f the damages, after deducting the employee's expenses . . . shall be more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient *to reimburse* [*the employer*] *for* . . . *his claim*, and the excess shall be assessed in favor of the injured employee." (Emphasis added.) General Statutes (Sup. 1951) § 1311b. Reading these provisions as a whole, we concluded in *Enquist* that the 1951 amendment was "an apparent tradeoff . . . [that] made the employer liable for future compensation benefits, but [that also] gave the employer the right to immediate reimbursement for the present worth of future compensation payments to the extent that the future payments were known and formalized by a commissioner's 'award'

prior to the disposition of the third party action."
*Enquist* v. *General Datacom*, supra, 24.

We further concluded, on the basis of our holding
in *Rosenbaum* v. *Hartford News Co.*, supra, 92 Conn.
401–402, and the doctrine of legislative acquiescence,
that, even though the language of the pre-1993 amend-
ment version of § 31-293 (a) did not explicitly provide
that an employer's claim also included the right to "a
credit" for future benefits that were unknown at the
time of disposition of the third party action, the statute
nonetheless included such a right. *Enquist* v. *General
Datacom*, supra, 218 Conn. 25. Specifically, we stated
that, although General Statutes (Sup. 1951) § 1311b
"provided that an employer had a continuing obligation
to provide compensation . . . [it did not] alter our ear-
lier construction of the [predecessor] statute, as set
forth in *Rosenbaum*, that an employer was discharged
from his obligations to the extent of the excess moneys
available from a third party recovery. In the absence
of any express statutory language or legislative history
suggesting that our precedent was to be overruled, we
decline to read the 1951 . . . statute as eliminating an
employer's right to a credit to the extent that there are
excess proceeds from a third party recovery." Id. As
further support for our holding in *Enquist*, we remarked
that such holding comported with other well estab-
lished principles of workers' compensation law, in par-
ticular, "the avoidance of two independent compen-
sations for the injury . . . ." (Internal quotation marks
omitted.) Id., 26.

We conclude that the reasoning that we employed in
*Enquist* is equally applicable to the present case. First,
the relevant provisions that we interpreted in *Enquist*
remain part of the current version of § 31-293 (a), and
"[i]t is a basic tenet of statutory construction that [w]e
construe a statute *as a whole* and *read its subsections
concurrently* in order to reach a reasonable overall

interpretation." (Emphasis added; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 9, 905 A.2d 55 (2006). "We are further guided . . . by the presumption that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *In re Judicial Inquiry No. 2005-02*, 293 Conn. 247, 262, 977 A.2d 166 (2009). "Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *State* v. *Fernando A.*, 294 Conn. 1, 21, 981 A.2d 427 (2009). Finally, we find it significant that the legislature has amended § 31-293 twice since our decision in *Enquist* but has made no attempt to alter our construction of the statute as applying to unknown, future benefits.[6] We therefore conclude that the doctrine of legislative acquiescence is applicable to the present case and that we may infer that our interpretation of § 31-293 (a) comports with the legislature's intent. See, e.g., *Berkley* v. *Gavin*, 253 Conn. 761, 776–77 n.11, 756 A.2d 248 (2000) ("we . . . [employ] the doctrine [of legislative acquiescence] not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue"); see also *State* v. *Salamon*, 287 Conn. 509, 525, 949 A.2d 1092 (2008) ("legislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute" [internal quotation marks omitted]). Applying these principles to the

---

[6] In addition to amending § 31-293 (a) in 1993, the legislature amended that provision in 1996. Public Acts 1996, No. 96-65, § 2. The 1996 amendment made technical changes and added references to the custodian of the second injury fund and employers who fail to comply with General Statutes § 31-284 (b).

lien provision contained in § 31-293 (a), we conclude that the scope of an employer's lien is coextensive with that of an employer's "claim," as defined by § 31-293 (a) and interpreted in *Enquist*, and, therefore, includes a credit for unknown, future workers' compensation benefits in the amount of the net proceeds that the injured employee recovers from a third party tortfeasor.

As with our conclusion in *Enquist*, our current decision is consistent with the well established public policy embodied in the act that double compensation for an injury is to be avoided. See, e.g., *Durniak* v. *August Winter & Sons, Inc.*, 222 Conn. 775, 779–80, 610 A.2d 1277 (1992); *Paternostro* v. *Edward Coon Co.*, 217 Conn. 42, 49, 583 A.2d 1293 (1991). In addition, we are mindful that "the principal thrust of [P.A. 93-228] was to cut costs in order to address the spiraling expenses required to maintain the system"; *Rayhall* v. *Akim Co.*, 263 Conn. 328, 346, 819 A.2d 803 (2003); and that our conclusion comports with "the intent of the legislature to reduce costs and [to] promote efficiency in workers' compensation proceedings." *Del Toro* v. *Stamford*, 270 Conn. 532, 547, 853 A.2d 95 (2004). Specifically, our interpretation of the lien provision as providing coextensive rights of recovery with those provided by the vehicles of intervention and direct action, reduces costs and promotes efficiency by ensuring that an employer will not have to file its own action—and thereby incur unnecessary costs and burden the judicial system—in order to protect its right to recover unknown, future benefits.

Our conclusion also finds support in the legislative history of P.A. 93-228, § 7. Although the legislative history does not specifically mention that the scope of an employer's lien shall include a credit for future workers' compensation benefits, such a conclusion can be inferred from various comments by legislators during the House debate on the bill that ultimately became P.A. 93-228. First, it is clear that the legislature intended

that the lien provision be read with reference to, supplemented by, and interpreted in light of other parts of the statute and, in particular, the provision concerning an employer's right to intervene in an employee's action against a third party tortfeasor. During the debate on the bill containing the 1993 amendment to § 31-293 (a), Representative William J. Varese, evidently recognizing that the proposed lien provision was silent on the subject, asked whether an employer's lien would include the full amount of the third party recovery or only the net amount, after the deduction of costs and fees. Representative Michael P. Lawlor, the proponent of the bill and cochairperson of the committee that introduced the bill,[7] replied that the current law already allowed for such deductions and that, if the 1993 amendment were to pass, those deductions would still be part of the law.[8] 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6183–84. A review of § 31-293 (a) reveals that Representative Lawlor was referring to the deductions for "reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery"; General Statutes § 31-293 (a); which language appears

---

[7] The bill was introduced by the labor and public employees committee.

[8] The following exchange occurred between Representatives Varese and Lawlor during a debate on the 1993 bill:

"[Representative] Varese: . . . In regard to third party actions. It is my understanding that the employer or the insurer would have a lien on any judgment or any settlement that occurred . . . . Is that correct? . . .

"[Representative] Lawlor: . . . Yes, that is correct . . . .

"[Representative] Varese: . . . [W]ould that be, for legislative intent, would that be a lien in total or would that be a lien after taking into account costs [or] fees . . . that would have had to be expended by the worker in order to obtain the additional funds? . . .

"[Representative] Lawlor: . . . [I]n the current law, those are allowed deductions.

"[Representative] Varese: . . . [A]nd in conjunction with this proposed amendment, and if the current law of the amendment were married, would that still be the law? . . .

"[Representative] Lawlor: . . . The answer is yes." 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6183–84.

in the portion of the statute discussing the rights of an employer that intervenes in an employee's action against a third party tortfeasor. Accordingly, we conclude that the legislature intended for the lien provision to be read in conjunction with and interpreted in a similar manner to the provisions relating to intervention.

We also conclude that the legislature intended for the rights that the lien provision confers on an employer to be coextensive with those of an employer that intervenes under § 31-293 (a), as evidenced by the following exchange during a debate on the 1993 bill in the House. Representative Dale W. Radcliffe asked whether it was "necessary for the employer to intervene as a third party plaintiff *or are the employer's rights protected or guaranteed by virtue of the lien* when the claimant brings an action against a third party?" (Emphasis added.) 36 H.R. Proc., supra, p. 6224. Representative Lawlor replied that "[i]t [was his] understanding that the employer's rights would be protected under this language." Id., p. 6225.

Finally, our conclusion is supported by our recent decision in *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 971 A.2d 1 (2009). In *Soracco*, we stated that "a judgment lien . . . can be asserted by [an] employer to recover any amount that he has paid *or has become obligated to pay* as compensation to the injured employee"; (emphasis added; internal quotation marks omitted) id., 95; and that an employer may "impose a lien on any judgment or settlement, up to the amount of its workers' compensation *liability* . . . ." (Emphasis added.) Id., 97. Thus, it is clear that this court has understood that the scope of the lien provision contained in § 31-293 (a) encompasses more than just the amount of benefits than an employer previously has paid to an employee.

The plaintiff urges us to adopt a different interpretation of the lien provision. The plaintiff first claims that the language in that provision should be interpreted as applying to only those benefits that an employer has paid to date and not to unknown, future benefits. Specifically, the plaintiff notes that the portion of the statute that defines an employer's "claim," which term appears in the statute's provisions regarding an employer's right to intervene in the employee's action, or to file a direct action, against the third party tortfeasor, refers to "probable future payments," whereas the lien provision is completely silent with respect to its scope and contains no similar reference. Accordingly, the plaintiff contends that, because the terms "claim" and "lien" are not synonymous, and the language in the lien provision does not mirror the language in the statute's definition of an employer's "claim," the lien provision should not be interpreted in a like manner. We are not persuaded.

The plaintiff's claim is premised on her apparent view that the lien provision should be interpreted in a vacuum, without reference to the statute's other provisions. This view of statutory interpretation is contrary to our case law and General Statutes § 1-2z, which directs us to "construe a statute *as a whole* and *read its subsections concurrently* in order to reach a reasonable overall interpretation." (Emphasis added; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 280 Conn. 9. Although it is true that the terms "claim" and "lien" are not synonymous, this fact does not aid the plaintiff's claim. A lien is a property interest; Black's Law Dictionary (9th Ed. 2009) (defining "lien" as "[a] legal right or interest that a creditor has in another's property"); whereas the term "claim" refers to the amount of money a party is owed or to a "right to payment . . . ." Id. Consequently, an employer's "claim," as that term is used in § 31-293 (a), necessarily defines the scope or extent of the employer's "lien."

It is not surprising, therefore, that the legislature, in enacting P.A. 93-228, § 7, did not include additional language in the lien provision defining its scope because such language would have been redundant inasmuch as the pre-1993 amendment version of the statute already contained a definition of an employer's claim. See *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 588, 775 A.2d 284 (2001) ("[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless [or redundant] provisions" [internal quotation marks omitted]). Moreover, the legislative history clearly indicates that the legislature intended for the lien provision to be read in conjunction with, supplemented by, and interpreted in a similar manner to the provisions relating to intervention and direct actions against third party tortfeasors. Accordingly, we agree with the defendant that the interpretation of the lien provision that the plaintiff urges is untenable.

The plaintiff also claims that interpreting the lien provision as including a credit for unknown, future workers' compensation benefits would "effectively end the employee's workers' compensation claim by prohibiting [the employee] from collecting further workers' compensation benefits," and that such an interpretation is "inconsistent with the humanitarian and remedial purpose of the [act]." We disagree.

General Statutes § 31-293 (a) expressly provides "that the claim of the employer . . . shall take precedence over that of the injured employee in the proceeds of the [third party] recovery . . . ." The purpose of this provision is to effectuate the well established public policy embodied in the act that double compensation for an injury is to be avoided. See, e.g., *Durniak* v. *August Winter & Sons, Inc.*, supra, 222 Conn. 779–80. By including this language in § 31-293 (a), the legislature has expressed its intent that this policy trump the otherwise remedial purpose of the act. In reaching this con-

clusion, we are mindful that the statute also provides that "[t]he rendition of a judgment . . . against the [third] party shall not terminate the employer's obligation to make further compensation . . . to the injured employee." General Statutes § 31-293 (a). Reading these provisions together, we conclude that the legislature intended for the statute to provide a safety net to those employees whose claims are undervalued in settlement or judgment rather than to provide a windfall to those employees whose claims are more accurately assessed. Thus, if an employee incurs future compensable expenses that ultimately exceed the net proceeds of the employee's third party recovery, that employee would benefit from the safety net in the statute because the employee could continue to claim benefits from the employer. If, however, an employee's net proceeds from a third party recovery are greater than the employee's future compensable expenses, then that employee would not be permitted to claim additional workers' compensation benefits and thereby realize a windfall recovery.

The plaintiff next claims that the notion that a double recovery necessarily arises whenever an employee settles with a third party is "fundamentally flawed." The plaintiff notes that an injured employee's claim against a third party tortfeasor allows for the recovery of the full spectrum of tort damages, including loss of functional ability and pain and suffering, whereas the recovery from an employer under the act is much more narrow in scope. The plaintiff argues, therefore, that, "[a]lthough an employee's net recovery in a third party action under § 31-293 may . . . include damages for past and future economic losses over and above the minimum amounts authorized by the act . . . a substantial amount of that recovery unquestionably represents sums to which the employee, alone, is entitled by virtue of the tort inflicted [on] him." (Citation omitted.)

*Enquist* v. *General Datacom*, supra, 218 Conn. 39 (*Glass, J.,* dissenting). The plaintiff claims that our interpretation of the statute improperly takes from "[t]he employee . . . the exclusive right to any amount of that recovery"; id.; because, as in the present case, third party tort recoveries are often paid in lump sums and are not apportioned as to the specific losses for which they are compensating the employee. The plaintiff argues that, in order to correct this perceived inequity, a burden of proving that a double recovery exists should be placed on the employer, much like it is placed on a defendant who seeks to prove that a plaintiff has received a collateral source benefit in an ordinary tort case. In support of this claim, the plaintiff notes that the collateral source rule, which is codified at General Statutes § 52-225a, also was intended to prevent double recoveries; however, § 52-225a (b)[9] explicitly requires a hearing so that evidence may be presented regarding collateral source payments. The plaintiff contends that it is irrational that the legislature, in an attempt to foster the public policy against double recoveries by injured persons, would enact one statute, namely, § 52-225a, that requires a hearing, and another statute, namely, § 31-293 (a), that does not. The plaintiff therefore argues that we should import into the statute a requirement that employers prove that a double recovery exists. We decline to do so.

The plaintiff again ignores the fact that General Statutes § 31-293 (a) expressly provides that "the claim of the employer . . . shall take precedence over that of the injured employee in the proceeds of the [third party] recovery . . . ." Although the rationale for this provi-

---

[9] General Statutes § 52-225a (b) provides: "Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment."

sion is to prevent double recoveries, we do not ignore the explicit mandate of a statute simply because its rationale might not apply perfectly in every instance. We further note that much of the plaintiff's claim mirrors the analysis in Justice Glass' dissent in *Enquist* v. *General Datacom*, supra, 218 Conn. 27–46 (*Glass, J.*, dissenting). Although Justice Glass raised some compelling arguments, ultimately, the majority in *Enquist* did not agree with his reasoning because the countervailing factors and, in particular, the legislature's acquiescence in our decision in *Rosenbaum* v. *Hartford News Co.*, supra, 92 Conn. 398, weighed more heavily in support of an interpretation of § 31-293 (a) that allows a credit for unknown, future workers' compensation benefits. Nothing has transpired since our decision in *Enquist* that would cause us to conclude that our holding in that case is unsound. To the contrary, our conviction in that holding has only strengthened in light of the fact that the legislature has made no attempt to alter our construction of the statute in the nearly two decades since that case was decided.

We also reject the plaintiff's invitation to impose a requirement on employers to prove that a double recovery exists in an employee's settlement with a third party. Nothing in § 31-293 (a) suggests that we should impose such a requirement, and we decline, by judicial fiat, to create one. "We are not in the business of writing statutes; that is the province of the legislature. Our role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated." (Internal quotation marks omitted.) *State* v. *Rupar*, 293 Conn. 489, 511, 978 A.2d 502 (2009). Moreover, we are not persuaded by the plaintiff's reliance on § 52-225a. In our view, the legislature's inclusion of the hearing requirement in § 52-225a (b) indicates that, when the legislature intends to create a hearing requirement, it will effectuate that

intent by including explicit language to that effect in the statute. See, e.g., *Genesky* v. *East Lyme*, 275 Conn. 246, 258, 881 A.2d 114 (2005) (legislature knows how to enact legislation consistent with its intent). Clearly then, the absence of such language in § 31-293 indicates that the legislature did not intend to impose a hearing requirement or allocate a burden of proof with respect to an employer's claim for reimbursement under the act. See *Saunders* v. *Firtel*, supra, 293 Conn. 527 ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

The plaintiff's final claim is that, even if the lien provision entitles employers to a credit for future workers' compensation benefits, the defendant has waived its right to such a credit because it was "less than vigilant" in protecting its rights. Specifically, the plaintiff claims that, because this court has not yet interpreted the scope of an employer's rights under the lien provision, the defendant should have filed an action directly against the third party tortfeasor, rather than taking the less prudent and easier course of action of merely sending a letter of notification of the lien. This claim has no merit.

Obviously, it would have been less risky for the defendant to file an action directly against the third party in order to protect its right of recovery for unknown, future benefits. It also would have been more costly. It is the defendant's choice as to how it wants to pursue its claim. The law does not require parties to follow the most prudent litigation strategy. Moreover, an employer does not waive its rights simply because an issue has yet to be decided by this court. Accordingly, we conclude that the defendant has not waived its claim.

The decision of the board is affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.