Argued September 22—officially released December 21, 2010

*Sarah Healy Eagan*, with whom were *Stacey Violante Cote* and, on the brief, *Joshua Michtom*, for the appellant (petitioner).

*Benjamin Zivyon*, assistant attorney general, with whom were *Mary-Anne Z. Mulholland*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (intervenor).

*Opinion*

DiPENTIMA, C. J. The petitioner, Jose B., appeals from the judgment of the trial court dismissing his petition seeking to have himself adjudicated as neglected and as an uncared-for youth, filed pursuant to General Statutes § 46b-129 (a). On appeal, Jose claims that the court improperly (1) determined that it lacked subject matter jurisdiction over the petition, (2) determined

that the petition was moot, (3) concluded that the capable of repetition yet evading review exception to the mootness doctrine did not apply and (4) failed to make reasonable inferences in favor of his petition. We conclude that Jose has failed to establish the factual predicate for the court's statutory jurisdiction. Accordingly, we affirm the judgment of the trial court dismissing Jose's petition.

The following facts and procedural history are necessary for the resolution of Jose's appeal. On July 15, 2009, two days before his eighteenth birthday, Jose filed two ex parte motions with the Superior Court for Juvenile Matters in Hartford seeking an order of temporary custody and an order of emergency commitment to the department of children and families (department).[1] On the same date, the petitioner filed the petition seeking to have himself adjudicated as neglected and uncared for. Jose alleged that his mother was a resident of Puerto Rico and that his father's identity and whereabouts were unknown. He further alleged that he had been living with his uncle, having been placed there by his mother approximately four years earlier. Following his uncle's incarceration, Jose became homeless.

That same day, the court denied Jose's ex parte motions. On or about August 18, 2009, the department moved to intervene for the limited purpose of moving to dismiss the neglect and uncared-for petition. The department also filed a motion to dismiss and an accompanying memorandum of law. On September 4, 2009, the court, concluding that the department was a necessary party, granted the motion to intervene.

The court heard oral argument on the department's motion to dismiss and, following supplemental briefing,

---

[1] Because the commissioner of children and families acts on behalf of the department of children and families, references in this opinion to the department include the commissioner.

issued its memorandum of decision on January 14, 2010. The court concluded that it lacked the statutory authority to commit an individual who was eighteen years of age or older on a retroactive basis. As a result, it determined that, because it could not afford Jose any direct practical relief, the case was moot. It further determined that neither the collateral consequences nor the capable of repetition yet evading review exceptions to the mootness doctrine applied.[2] Accordingly, the court granted the department's motion to dismiss.

On appeal, Jose argues that because his neglect petition indisputably was filed prior to his becoming eighteen years old, the court had jurisdiction to consider its merits. He also maintains that the court possessed statutory authority to order a retroactive commitment. Jose further contends that, even if the neglect petition was moot as a result of his reaching the age of eighteen, the court misapplied the collateral consequences and the capable of repetition yet evading review exceptions. The department counters that the court correctly determined that it lacked subject matter jurisdiction to hear the case and that the mootness exceptions did not apply.

Before addressing the merits of this appeal, we note that subsequent to the trial court's memorandum of decision and the filing of the briefs by the parties, our Supreme Court released its decision in *In re Matthew F.*, 297 Conn. 673, 4 A.3d 248 (2010).[3] An appropriate starting point is a discussion of that case, as it provides

---

[2] The court noted that Jose "did not expressly claim the applicability of the collateral consequences exception to the mootness doctrine, although he does claim he was entitled to benefits that would accrue to him were he to be committed to the department effective as of some date preceding his eighteenth birthday."

[3] On July 30, 2010, we ordered the parties to file simultaneous supplemental briefs addressing the impact of *In re Matthew F.*, supra, 297 Conn. 673, on the present matter.

substantial guidance in resolving the present matter. Shortly before his eighteenth birthday, Matthew sought to have himself adjudicated as an uncared-for youth after he had started two fires. Id., 678–79. Three days before his eighteenth birthday, the court adjudicated Matthew uncared for and committed him to the care of the department. Id., 680. After becoming eighteen years old, Matthew sought continuing services; the department, however, argued that the court, specifically, the Superior Court for Juvenile Matters, had been divested of jurisdiction once Matthew had reached the age of eighteen years old. Id., 680–81. The trial court rejected the department's argument on the ground that Matthew had been committed to the department prior to his eighteenth birthday. Id., 681.

Following the resolution of the criminal charges against him, Matthew sought an order for services that would require the department to provide him with a twenty-four hour placement and to discontinue any effort to transfer him to the custody of the department of mental health. Id., 682–83. The department objected, renewing its argument that the court had lost jurisdiction following Matthew's eighteenth birthday and that it had no obligation to provide continuing services. Id., 683. The trial court again rejected the department's jurisdictional argument and ordered continued services for Matthew. Id., 683–84.

The department appealed to our Supreme Court, arguing, inter alia, that the jurisdiction of the Superior Court for Juvenile Matters was divested once Matthew turned eighteen and that neither General Statutes § 17a-11[4] nor § 46b-129 provided a basis for jurisdiction over

[4] General Statutes § 17a-11 (a) provides in relevant part: "The commissioner may, in the commissioner's discretion, admit to the department on a voluntary basis any child or youth who, in the commissioner's opinion, could benefit from any of the services offered or administered by, or under contract with, or otherwise available to, the department. . . ."

the motion for services. Id., 684–85. After noting that these issues were "interrelated"; id., 687; our Supreme Court stated: "We conclude that, although the jurisdiction of the Superior Court for Juvenile Matters does not necessarily cease when a youth committed to the department turns eighteen, in the present case, the trial court did not have jurisdiction because Matthew neither alleged nor established the requirements of either statutory provision." Id., 688.

In explaining its reasoning for rejecting the department's first claim, our Supreme Court observed that the delineation of General Statutes § 46b-121[5] is not jurisdictional. Id., 689–90. Specifically, it noted that Connecticut has a unified court system and that all civil matters, including juvenile matters, are within the jurisdiction of the Superior Court. Id., 690–91. Further, it reasoned that the issue of " 'juvenile jurisdiction' " is akin to venue rather than subject matter jurisdiction. Id., 691. It then concluded that the Superior Court for Juvenile Matters did not lose jurisdiction merely because Matthew had reached the age of eighteen. Id., 693–94.

The court then proceeded to the question of whether the trial court had a statutory basis to exercise jurisdiction to issue the contested order. Id., 694. It began with the principle that a Superior Court may exercise

[5] General Statutes (Rev. to 2009) § 46b-121 (a) (1) provides in relevant part: "Juvenile matters in the civil session include all proceedings concerning uncared-for, neglected or dependent children and youths within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs, contested matters involving termination of parental rights or removal of guardian transferred from the Probate Court, the emancipation of minors and youths in crisis, but does not include matters of guardianship and adoption or matters affecting property rights of any child, youth or youth in crisis over which the Probate Court has jurisdiction, provided appeals from probate concerning adoption, termination of parental rights and removal of a parent as guardian shall be included. . . ."

jurisdiction when a valid and cognizable cause of action, or other matter, over which jurisdiction has not been vested in some other court, exists. Id., 695. It then turned to the relevant statutory framework, namely, §§ 17a-11 and 46b-129, which allow for the continuation of services from the department after an individual reaches the age of eighteen. Id., 696–97. Our Supreme Court ultimately concluded that Matthew had failed to establish the necessary factual predicate to establish the statutory jurisdiction. Id., 700. Ultimately, it reversed the judgment of the trial court and remanded the case with direction to dismiss Matthew's motion for services. Id., 701.

Unlike the trial court, we have the benefit of our Supreme Court's decision in *In re Matthew F.*[6] We are required to apply that court's reasoning to the appeal. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010). Accordingly, we will consider and evaluate the claims raised in light of this controlling precedent. See, e.g., *Max's Place, LLC* v. *DJS Realty, LLC*, 123 Conn. App. 408, 415, 1 A.3d 1199 (2010).

As a preliminary matter, we set forth our standard of review and certain legal principles that guide our analysis. "[A] determination regarding a trial court's subject matter jurisdiction is a question of law, [and therefore] our review is plenary. . . . Moreover, our analysis of the court's jurisdiction . . . requires us to examine the scope and effect of several statutory schemes. In making such determinations, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z; *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ([o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . .).

---

[6] The trial court issued its memorandum of decision on January 14, 2010. On August 3, 2010, our Supreme Court officially released its decision in *In re Matthew F.*, supra, 297 Conn. 673.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . Moreover, [a]lthough it is a critical prerequisite to any court's involvement in a case, we repeatedly have held that, when a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *In re Matthew F.*, supra, 297 Conn. 688–89.

The trial court, citing *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 284–86, 455 A.2d 1313 (1983), and *In re Juvenile Appeal (83-BC)*, 189 Conn. 66, 83, 454 A.2d 1262 (1983) (*Parskey, J.*, concurring in part and dissenting in part), properly observed that the court's authority to commit a child or youth to the department as neglected[7] or uncared for[8] is strictly statutory. The relevant statutes, therefore, are the appropriate starting point for our analysis. Section 46b-129 (a) provides in relevant part that "[a]ny . . . child or such child's representative or attorney . . . may file with the Superior

---

[7] General Statutes (Rev. to 2009) § 46b-120 (9) provides that "a child or youth may be found 'neglected' who (A) has been abandoned, (B) is being denied proper care and attention, physically, educationally, emotionally or morally, (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child or youth, or (D) has been abused . . . ."

[8] General Statutes (Rev. to 2009) § 46b-120 (10) provides that "a child or youth may be found 'uncared for' who is homeless or whose home cannot provide the specialized care that the physical, emotional or mental condition of the child or youth requires."

Court that has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for or dependent, within the meaning of section 46b-120 . . . ."

Section 46b-129 (j) provides in relevant part that "[u]pon finding and adjudging that any child or youth is uncared-for, neglected or dependent, *the court may commit such child or youth* to the Commissioner of Children and Families. . . ." (Emphasis added.) We have explained that upon such a finding, the court has three options: "(1) commit the child to the commissioner of children and families; (2) vest guardianship of the child in a third party until the child reaches the age of eighteen; or (3) permit the natural parent or guardian to retain custody and guardianship of the child with or without protective supervision." *In re David L.*, 54 Conn. App. 185, 192 n.7, 733 A.2d 897 (1999).

General Statutes § 46b-120 sets forth the definition of the terms "youth" and "child." Specifically, that statute provides: " 'Child' means any person under sixteen years of age . . . [and] 'youth' means any person sixteen or seventeen years of age . . . ." General Statutes § 46b-120 (1) and (2).

Considering those statutory subdivisions together, we reach the following conclusions. A petition alleging that an individual under the age of eighteen is neglected or uncared for may be filed on behalf of that individual.[9]

[9] We are mindful of the department's obligation to plan and to develop "a comprehensive and integrated state-wide program of services" for, inter alia, "*all* children and youths who are or may be committed to it by any court . . . ." (Emphasis added.) General Statutes § 17a-3 (a). This statutory directive prohibits the department from purposefully delaying adjudication of petitions filed by those individuals approaching their eighteenth birthday.

We stress that the record before us contains no evidence of such purposeful action by the department. Further, we by no means intend to imply that such conduct is or has occurred. We simply point out the legislature's directive to the department to plan for and to provide service to all children and youths, including those approaching the age of majority.

See General Statutes § 46b-129 (a). The express language of § 46b-129 (j), however, provides the court with the authority only to commit an individual that satisfies the definition of a "child" or a "youth" found in § 46b-120 (1) and (2).

Our conclusion is supported by the tenets of statutory construction. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

Our review of the language of § 46b-129 (j) and its relationship to the other relevant statutes leads to the conclusion that trial courts possess authority to commit children or youths, that is individuals statutorily defined as being under the age of eighteen. We are not persuaded that the authority for a retroactive commitment is found in this statutory framework. "We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citation omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33 (2001); see also *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 682, 911 A.2d 300 (2006) ("[t]his court cannot, by judicial construction, read into legislation

provisions that clearly are not contained therein" [internal quotation marks omitted]); *Walter* v. *State*, 63 Conn. App. 1, 8, 774 A.2d 1052 ("We are also mindful that [t]he court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. . . . In such a situation, the remedy lies not with the court but with the General Assembly." [Internal quotation marks omitted.]), cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001).

Furthermore, we note that our legislature has expanded the definition of "child" in the context of delinquency proceedings. Specifically, General Statutes (Rev. to 2009) § 46b-120 defines that term as follows: "[F]or purposes of delinquency matters, 'child' means any person (A) under sixteen years of age, or (B) sixteen years of age or older who, prior to attaining sixteen years of age, has violated any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs, and, subsequent to attaining sixteen years of age, violates any order of the Superior Court or any condition of probation ordered by the Superior Court with respect to such delinquency proceeding . . . ."

The legislature has modified the meaning of "child" for delinquency proceedings to include, inter alia, an individual seventeen years of age or older who had committed a delinquent act prior to reaching the age of seventeen and then, after reaching seventeen, violates an order, or condition of probation ordered by the Superior Court with respect to the delinquency proceeding. In contrast, the legislature has not expanded the court's authority to commit a "child" or "youth" by broadening the statutory definition of those terms. The definitions, as set forth in § 46b-120, must apply to commitment proceedings. "[W]here a statute, with reference to one subject contains a given provision, the

omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *In re Ralph M.*, 211 Conn. 289, 306, 559 A.2d 179 (1989); see also *Colangelo* v. *Heckelman*, 279 Conn. 177, 190, 900 A.2d 1266 (2006) ("we interpret legislative intent by reference to what the legislative text contains, not by what [that text] might have contained" [internal quotation marks omitted]).

We note that Jose argues that because §§ 17a-11 (g) and 46b-129 (j) allow committed minors to remain in the department's care until they reach the age of twenty-one if certain conditions are met, this demonstrates a broader legislative intent with respect to the court's authority to commit individuals who timely file a petition prior to reaching the age of eighteen. Both of these statutes, however, require that individuals in this age range must previously have been in the care of the department. We conclude, therefore, that the fact that services may be provided in some circumstances to individuals who have reached the age of eighteen does not support Jose's claim with respect to the court's authority to order a commitment after he turned eighteen.

Guided by the reasoning set forth by our Supreme Court in *In re Matthew F.*, supra, 297 Conn. 673, and our analysis of the relevant statutes, we conclude that the jurisdiction of the Superior Court for Juvenile Matters did not cease merely because Jose reached the age of eighteen. Under the facts and circumstances of the present case, however, Jose failed to establish the requirements of § 46b-129 (j), namely, that the court could commit the eighteen year old Jose to the department. We conclude, therefore, that Jose failed to establish the factual predicate required for jurisdiction under that statute, and, accordingly, the trial court lacked

jurisdiction over the matter.[10] The trial court, therefore, properly granted the department's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] As a result of our conclusion, we need not reach the other claims raised by Jose in this appeal.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.