IN RE JEFFREY M.*
(AC 33602)

Bear, Espinosa and Lavery, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 4—officially released February 24, 2012**

*Michael Besso*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, *Gregory T. D'Auria*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the appellant (proposed intervenor).

*Naomi Fetterman*, special public defender, with whom, on the brief, was *Aaron J. Romano*, special public defender, for the appellee (respondent).

*Opinion*

LAVERY, J. The proposed intervenor, the department of children and families (department),[1] appeals from the order of the trial court denying its motion to intervene and committing the juvenile respondent, Jeffrey M., to its custody and placing him in an out-of-state

---

** February 24, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Because the commissioner of children and families acts on behalf of the department of children and families, references in this opinion to the department include the commissioner. See *In re Jose B.*, 125 Conn. App. 572, 574 n.1, 11 A.3d 682 (2010), aff'd, 303 Conn. 569, 34 A.3d 975 (2012).

facility. The court's order followed the court's finding Jeffrey M. delinquent pursuant to a plea agreement that required Jeffrey M. to plead guilty to robbery in the second degree. On appeal, the department claims that it improperly was denied its right to intervene in the underlying matter and that the court's order was not authorized by statute. We agree with the department and, accordingly, reverse the judgment of the trial court.[2]

The following facts and procedural history are relevant to our review of the department's appeal. Jeffrey M., a fifteen year old juvenile, was charged with several robberies. On June 29, 2011, the trial court conducted a hearing on the matter. Jeffrey M. entered a plea of guilty to a single count of robbery in the second degree in violation of General Statutes § 53a-135. The court then found Jeffrey M. to be delinquent, according to the plea. The court ordered Jeffrey M. to be committed to the department and to be placed directly at the Glenn Mills School, a residential facility in Pennsylvania.

On July 11, 2011, the department filed a motion to intervene in the matter and to modify or vacate the court's order. The department argued that the court's orders may cause Connecticut to violate the Interstate Compact on the Placement of Children and the Interstate Compact for Juveniles, enacted at General Statutes §§ 17a-175 and 46b-151h, respectively, and may exceed the court's placement authority pursuant to General Statutes § 46b-140 because the orders require placement in a privately run residential facility outside of this state. The court held a hearing on the motion on July 12, 2011. At the hearing, the court denied the department's motion. The court held further hearings

[2] Because we conclude that the department had the right to intervene, we also conclude that we have subject matter jurisdiction over this appeal. See *Trumbull* v. *Palmer*, 123 Conn. App. 244, 251–52, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010).

on July 15 and 20, 2011, for the purpose of obtaining reports from the department concerning the execution of the court's order. On July 15, 2011, the department filed in this court a motion for an immediate interim stay. This court granted the motion on the same day. On July 28, 2011, this court granted the department's motion for review and requested relief for stay. At no point in the proceedings has the department been a party to this matter.

On appeal, the department argues that the trial court erred for two reasons. First, it argues that the court erred when it denied the department's motion to intervene because the department was entitled to intervention as of right. Second, it claims that the court erred when it ordered that the department place Jeffrey M. in an out-of-state facility upon a delinquency dispositional order of commitment to the department. Jeffrey M. responds by addressing each of the department's arguments. First, he argues that the department had been permitted to intervene in this matter. Second, he argues that the court had the authority to order him to be placed in an out-of-state facility. We will consider each claim in turn.[3]

I

First, the department claims that the trial court erred when it denied its motion to intervene. The department argues that it was entitled to intervention as of right. Jeffrey M. responds by arguing that the department was entitled only to be given the opportunity to be heard. He further argues that the department was provided with the opportunity to be heard on three dates, July 12, 15 and 20, 2011. He argues that the department's

---

[3] Although the parties briefed the issues in the reverse order, we believe that it is necessary to address whether the department had a right to intervene in this matter before addressing whether the court's order of commitment and placement was improper.

presence and participation in those three hearings render this issue moot. However, this court has noted in the past that "[t]he grace of the court is not a substitute for formal intervention with its concomitant rights." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 148, 758 A.2d 916 (2000). Because we conclude that the department had the right to intervene as a party, we find that its mere presence and participation at the three hearings was insufficient to amount to intervention. Accordingly, we do not agree with Jeffrey M. that this issue is moot.

A trial court's decision on a motion to intervene as of right is subject to plenary review. See *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 454–55, 904 A.2d 137 (2006). We look at four requirements to determine whether a movant had a right to intervene. Id., 456–57. "Specifically, [t]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation." (Internal quotation marks omitted.) Id.

"For purposes of judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion for leave to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true. The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on motion to intervene, at least in the absence of sham, frivolity, and other similar objections. . . . Thus, neither testimony nor other evidence is required to justify intervention, and [a] proposed

intervenor must allege sufficient facts, through the sub-
mitted motion and pleadings, if any, in order to make
a showing of his or her right to intervene. The inquiry
is whether the claims contained in the motion, if true,
establish that the proposed intervenor has a direct and
immediate interest that will be affected by the judg-
ment." (Citation omitted; internal quotation marks omit-
ted.) Id., 457.

First, we conclude that the department's motion to
intervene was timely. The court issued its order on
June 29, 2011, and the department filed its motion to
intervene on July 11, 2011. "The necessity for showing
that a would-be intervenor made a timely request for
intervention involves a determination of how long the
intervenor was aware of an interest before he or she
tried to intervene, any prejudicial effect of intervention
on the existing parties, any prejudicial effect of a denial
on the applicant and consideration of any unusual cir-
cumstances either for or against timeliness. . . . There
are no absolute ways to measure timeliness. . . . The
requirement that the request to intervene be prompt is
applied more leniently if intervention as of right is
sought, rather than permissively. . . . A trial court's
finding that timeliness exists or does not is a question
of fact and is described as a discretionary action." (Cita-
tions omitted.) *Rosado* v. *Bridgeport Roman Catholic
Diocesan Corp.*, supra, 60 Conn. App. 146–47. Here, the
trial court did not make a specific finding as to timeli-
ness when it denied the department's motion to inter-
vene. It is clear from our review of the record, however,
that the department became aware of its interest in the
matter only after the court included the department in
its June 29, 2011 order; the department filed its motion
just twelve days after the court issued its order. The
attorney for the department represented to the trial
court that he "did not wait," and contacted the attorney
for Jeffrey M. as soon as he became aware that the

court had issued its order. Therefore, considering all of the factors listed by this court in *Rosado*, we conclude that the department's motion to intervene was timely.[4]

Second, we conclude that the department clearly had a direct and substantial interest in the subject matter of the litigation, as the court committed Jeffrey M. to the custody of the department and ordered the department to fund his placement at the Glenn Mills School.

Third, we conclude that the court's order necessarily impaired the department's interest because it compelled the department to effectuate an order for which it claims there is no authority. Our Supreme Court has held that a trial court cannot enter an order that binds a nonparty state agency. *In re Devon B.*, 264 Conn. 572, 585, 825 A.2d 127 (2003) ("because [the state agency] is not a party to the proceeding, the court *cannot* order it to provide such services" [emphasis in original]).

Fourth, we conclude that the department had a unique interest in the matter at trial because it was the sole entity to which Jeffrey M. was committed and was charged with the duty to fund his placement at Glenn Mills. That interest was not represented adequately by any party to the matter. Indeed, all of the parties involved in the matter were in agreement with the court's order. We conclude that the department met all four requirements for intervention. Therefore, we conclude that the court erred by denying the department's motion for intervention.

---

[4] "It is well established that this court can take judicial notice of facts contained in the files of the Superior Court. See *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527, 294 A.2d 633 (1972) ('[t]here is no question . . . concerning our power to take judicial notice of files of the Superior Court, whether the file is from the case at bar or otherwise')." *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 579 n.17, 877 A.2d 761 (2005).

## II

Next, the department claims that the court erred by ordering it to place Jeffrey M. in an out-of-state facility. The department argues that there is no statutory authority to support the court's order. Specifically, the department contends that § 46b-140 (j) does not authorize the court to commit a juvenile to the department and mandate that the department place the juvenile at an out-of-state facility. It also argues that none of the other subsections of § 46b-140 authorizes the court to make such an order. Jeffrey M. responds by arguing that § 46b-140, when read as a whole, authorizes the court to place a juvenile in an out-of-state residential facility. He also argues that the court did not state that the order was issued pursuant to § 46b-140 (j) and that such an order is permitted under several of the other subsections of the statute. We agree with the department.

Because the issue requires statutory interpretation, which is a question of law, our review is plenary. "We begin by setting forth the relevant standard of review. Statutory construction is a question of law and therefore our review is plenary. . . . *Grondin* v. *Curi*, 262 Conn. 637, 649, 817 A.2d 61 (2003). We construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation. . . . Moreover, a court must construe a statute as it finds it, without reference to whether it thinks the statute would have been or could be improved by the inclusion of other provisions." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 757, 826 A.2d 156 (2003).

This court recently has stated, "[b]ecause the legislature must delegate sentencing authority to the courts, we focus upon relevant statutory provisions. Our Supreme Court has acknowledged that although 'the judicial branch is charged with the responsibility of

adjudicating criminal charges and ultimately determining the sentence of incarceration, if any, to be imposed,' the courts do not have exclusive authority with regard to sentencing. *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 828, 950 A.2d 1220 (2008). The Supreme Court has 'acknowledged the legislature's authority to define crimes and the appropriate penalties for them.' Id.; see also *State* v. *Truppi*, 182 Conn. 449, 467, 438 A.2d 712 (1980) ('[t]he legislature remains free . . . to define crimes and fix punishments, but once it has acted courts may not exceed their legislative authorization' [internal quotation marks omitted]), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981)." *State* v. *Brown*, 133 Conn. App. 140, 148–49, 34 A.3d 1007 (2012).

We begin with Jeffrey M.'s argument that a comprehensive reading of § 46b-140 empowers the court to craft individualized dispositions based on the facts of each case and the needs of each child, including the one that was ordered in this case. He begins his argument by noting that § 46b-140 (a)[5] requires the court to consider several factors to determine the appropriate disposition of a child convicted as delinquent. He argues that this shows that the court's jurisdiction extends beyond the mere conviction of the child as delinquent. Jeffrey M. then directs the court to the language of § 46b-140 (b),[6]

---

[5] General Statutes § 46b-140 (a) provides: "In determining the appropriate disposition of a child convicted as delinquent, the court shall consider: (1) The seriousness of the offense, including the existence of any aggravating factors such as the use of a firearm in the commission of the offense and the impact of the offense on any victim; (2) the child's record of delinquency; (3) the child's willingness to participate in available programs; (4) the existence of other mitigating factors; and (5) the culpability of the child in committing the offense including the level of the child's participation in the planning and carrying out of the offense."

[6] General Statutes § 46b-140 (b) provides: "Upon conviction of a child as delinquent, the court: (1) May (A) place the child in the care of any institution or agency which is permitted by law to care for children; (B) order the child to participate in an alternative incarceration program; (C) order the child to participate in a wilderness school program operated by the Department

which provides in relevant part that "the court . . . (1) [m]ay (A) place the child in the care of any institution or agency which is permitted by law to care for children . . . ." Jeffrey M. points out that this provision does not state that a child who is placed in the care of any institution cannot also be committed to the custody of the department. He also notes that the statute does not exclude the possibility that the department may be ordered to pay for the necessary placement without committing the child to the custody of the department. Therefore, he argues, under subsection (b) (1) (A), the court has the unfettered ability to tailor the disposition to the best interest of the child. We disagree.

Although Jeffrey M.'s argument might have some merit if subsection (b) (1) (A) stood alone, it fails when the subsection is read in the context of the entire statute, as is required by General Statutes § 1-2z.[7] Our Supreme Court has held that individual subsections should not be interpreted in a vacuum, without reference to the statute's other provisions. "[O]ur case law and General Statutes § 1-2z . . . directs us to construe a statute *as a whole* and *read its subsections concurrently* in order to reach a reasonable overall interpretation." (Emphasis in original; internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services,*

of Children and Families; (D) order the child to participate in a youth service bureau program; (E) place the child on probation; (F) order the child or the parents or guardian of the child or both to make restitution to the victim of the offense in accordance with subsection (d) of this section; (G) order the child to participate in a program of community service in accordance with subsection (e) of this section; or (H) withhold or suspend execution of any judgment; and (2) shall impose the penalty established in subsection (b) of section 30-89, for any violation of said subsection (b)."

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

297 Conn. 391, 408, 999 A.2d 682 (2010). When § 46b-140 is read in its entirety, subsection (b) (1) (A) clearly cannot support Jeffrey M.'s conclusions. Our review of the entire statute reveals that the broad language of subsection (b) (1) (A) is limited by the other subsections within the statute. It would be illogical for. us to conclude that the legislature intended a court to be free under subsection (b) (1) (A) to make any placement it believes is appropriate, and then go on to provide additional subsections allowing the court—with more specificity—to commit the child to the department with placement by the commissioner of children and families.[8] This determination is consistent with our case law that guides our interpretation of statutes. "It is a well-settled principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling. . . . When statutes relate to the same subject matter, they must be read together and specific terms covering the given subject matter will prevail over other general language of the same or another statute which might otherwise prove controlling." (Citation omitted; internal quotation marks omitted.) *Ware* v. *State*, 118 Conn. App. 65, 72, 983 A.2d 853 (2009). It is clear that all of the provisions of § 46b-140 relate to the same subject matter. The more specific subsections, therefore, must prevail over the general language of (b) (1) (A). Although subsection (b) (1) (A) does not state specifically that a child who is placed in the care of any institution cannot also be committed to the custody of the department, as Jeffrey M. argues, other subsections of the statute do specifically pertain to when the court may order a delinquency commitment to the department. Specifically, the statute is arranged

---

[8] See, e.g., General Statutes § 46b-140 (j), which provides in relevant part: "Except as otherwise provided in this section, the court may order a child be . . . (2) committed to the [department] for placement by the commissioner, in said commissioner's discretion . . . ."

such that all subsections including and following (f) inform the court as to when a commitment order to the department is permitted. We conclude that the statute's specific language regarding commitment to the department contained in subsections (f) through (k) controls here. Therefore, we conclude that the court is not authorized under subsection (b) (1) (A) to order that Jeffrey M. be both committed to the custody of the department and placed in an out-of-state residential facility.

We now consider whether the order was proper under other subsections of the statute. Jeffrey M. argues that the court had authority to make the order pursuant to either the explicit or implicit language of § 46b-140 (f), (g) and (j). Jeffrey M. presents two arguments to support his claim that subsection (f)[9] authorized the court to issue its order.[10] First he argues that the plain language of subsection (f) requires the court only to consult with the department to determine which placement is in the best interest of the juvenile but that the court retains the ultimate authority to assess placement and is not bound by the recommendation of the department. Jeffrey M. insists that the court met the consulting

[9] General Statutes § 46b-140 (f) provides: "If the court further finds that its probation services or other services available to the court are not adequate for such child, the court shall commit such child to the Department of Children and Families in accordance with the provisions of section 46b-141. Prior to making such commitment, the court shall consult with the department to determine the placement which will be in the best interest of such child."

[10] Jeffrey M.'s second argument asks us to consider legislative history. We are not permitted to inquire into extratextual evidence unless we find the language of the statute to not be plain and unambiguous. As we noted in footnote 7 of this opinion, § 1-2z provides in relevant part that "[i]f . . . the meaning of [the statutory] text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." We find the text of subsection (f) to be plain and unambiguous. Accordingly, legislative history will not be considered.

requirement of the subsection when it received the department's child and adolescent needs and strengths (CANS) evaluation in which it recommended nonresidential treatment, even though the court ultimately disregarded the recommendation. Therefore, Jeffrey M. asserts, the court had the authority to place him at any facility it determined to be in his best interest, including the Glenn Mills School. We disagree with this interpretation of subsection (f).

When § 46b-140 (f) is read in the context of the entire statute, as required by § 1-2z, it is clear that Jeffrey M.'s argument is flawed. Subsection (f) explicitly allows the court to commit the child only to the department. Furthermore, the subsection does not contain explicit authority for the court to place the child anywhere but with the department. It provides in relevant part: "If the court further finds that its probation services or other services available to the court are not adequate for such child, the court shall commit such child to the [department] . . . ." General Statutes § 46b-140 (f). Our Supreme Court repeatedly has stated that "[t]he use of different words [or the absence of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention . . . ." (Internal quotation marks omitted.) *Morris* v. *Congdon*, 277 Conn. 565, 572 n.7, 893 A.2d 413 (2006); see also *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988); *Fritz* v. *Madow*, 179 Conn. 269, 272, 426 A.2d 268 (1979). Other subsections explicitly authorize the court to place children. Section 46b-140 (b) provides in relevant part: "[T]he court: (1) May (A) place the child in the care of any institution or agency . . . ." Also, § 46b-140 (j) provides in relevant part: "[T]he court may order a child be . . . placed directly in a residential facility within this state . . . ." Because explicit authority for the court to directly place children

exists in other subsections, we conclude that the legislature did not give the court that power under subsection (f) intentionally. Accordingly, we conclude that the court's order could not have been issued under § 46b-140 (f).

Jeffrey M. also makes an argument under § 46b-140 (g).[11] His argument is essentially that, although it does not apply to him,[12] subsection (g) is a clear example of the court's authority to directly place a child in any institution while simultaneously committing the child to the department. Because we agree with both sides that subsection (g) does not apply to this case because it concerns only children who have been found to be mentally ill, this is an argument that we need not address.

Next, Jeffrey M. makes an argument under § 46b-140 (j).[13] Although he concedes that the court's order could

[11] General Statutes § 46b-140 (g) provides: "Any child or youth coming within the jurisdiction of the court, who is found to be mentally ill, may be committed by said court to the Commissioner of Children and Families and, if the court convicts a child as delinquent and finds such child to be mentally deficient, the court may commit such child to an institution for mentally deficient children or youth or delinquents. Whenever it is found that a child convicted as delinquent or adjudged to be a member of a family with service needs would benefit from a work-study program or employment with or without continued school attendance, the court may, as a condition of probation or supervision, authorize such child to be employed for part or full-time at some useful occupation that would be favorable to such child's welfare, and the probation officer shall supervise such employment. For the purposes of this section, the limitations of subsection (a) of section 31-23 on the employment of minors under the age of sixteen years shall not apply for the duration of such probation or supervision."

[12] Both sides agree that this subsection does not apply to this case and could not form the basis for the court's order.

[13] General Statutes § 46b-140 (j) provides: "Except as otherwise provided in this section, the court may order a child be (1) committed to the Department of Children and Families and be placed directly in a residential facility within this state and under contract with said department, or (2) committed to the Commissioner of Children and Families for placement by the commissioner, in said commissioner's discretion, (A) with respect to the juvenile offenders determined by the Department of Children and Families to be the highest risk, in the Connecticut Juvenile Training School, if the juvenile

not have been authorized by this subsection, he essentially argues that subsection (j) did not restrict the court in any way from relying on the other subsections. Specifically, he argues that because subsection (j) begins with the phrase, "[e]xcept as otherwise provided in this section," the court is not bound by subsection (j), and is free to place children under the other subsections of the statute, including sections (b), (f) and (g). Although we do not disagree with Jeffrey M., we conclude that this argument misses the point. We agree with the department that the order issued by the court in this case is not authorized by any subsection of the statute, including subsection (j). Subsection (j) allows the court to make one of two commitment orders. First, § 46b-140 (j) (1) allows the court to commit a juvenile to the department and order the juvenile's placement directly in a residential facility if it is within this state and under contract with the department. This is not what the court did because it committed Jeffrey M. to the department and placed him in an out-of-state facility that is not under contract with the department. Therefore, the order is not authorized under § 46b-140 (j) (1). Second, § 46b-140 (j) (2) allows the court to order a child to be "committed to the [commissioner] for placement by the commissioner, in said commissioner's discretion, (A) with respect to the juvenile offenders determined by the [department] to be the highest risk, in the Connecticut Juvenile Training School, if the juvenile offender is a male, or in another state facility, presumptively for a minimum period of twelve months, or (B) in a private residential or day treatment facility within or outside this state, or (C) on parole. . . ." Because the court

offender is a male, or in another state facility, presumptively for a minimum period of twelve months, or (B) in a private residential or day treatment facility within or outside this state, or (C) on parole. The commissioner shall use a risk and needs assessment classification system to ensure that male children who are in the highest risk level will be placed in the Connecticut Juvenile Training School."

ordered that Jeffrey M. be placed in the out-of-state facility, it did not commit him to the department for *placement by the commissioner.* Therefore, the court's order is not authorized under § 46b-140 (j) (2). Accordingly, the court's order is not permitted under § 46b-140 (j).

The court, the assistant state's attorney and the attorneys for Jeffrey M. all made an extraordinary effort to find a solution to which all parties agreed and that they thought was in the best interest of the child. Although their intentions were good, and the solution might be in the best interest of the child, the range of possible solutions is limited by statute. Unfortunately, the solution agreed upon here was beyond the scope of statutory authority.

The judgment is reversed only as to the denial of the department's motion to intervene and to modify or to vacate the order placing Jeffrey M. in an out-of-state facility and the case is remanded with direction to grant that motion and vacate that order and for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.